# United States Court of Appeals for the Federal Circuit

---

**AMERICAN CALCAR, INC.**
*Plaintiff-Appellant,*

v.

**AMERICAN HONDA MOTOR CO., INC.
AND HONDA OF AMERICA MANUFACTURING,
INC.,**
*Defendants-Cross Appellants.*

---

2009-1503, -1567

---

Appeal from the United States District Court for the Southern District of California in Case No. 06-CV-02433, Judge Dana M. Sabraw.

---

Decided: June 27, 2011

---

GARY M. BUTLER, Baker Botts L.L.P., of New York, New York, argued for plaintiff-appellant. With him on the brief were PAUL A. RAGUSA, ELIOT D. WILLIAMS and JENNIFER COZEOLINO.

ROBERT E. HILLMAN, Fish & Richardson P.C., of Boston, Massachusetts, argued for defendants-cross appellants. With him on the brief was JOHN T. JOHNSON, of New York, New York. Of counsel were MICHAEL F.

AUTUORO of New York, New York; AHMED J. DAVIS of Washington, DC; JOHN A. DRAGSETH of Minneapolis, Minnesota; FRANK PORCELLI and ROBERT E. HILLMAN, of Boston, Massachusetts; and MICHAEL M. ROSEN of San Diego, California.

---

Before LOURIE, BRYSON, and GAJARSA, *Circuit Judges*.

LOURIE, *Circuit Judge*.

American Calcar, Inc. ("ACI") appeals from the final judgment of the United States District Court for the Southern District of California. The court found U.S. Patents 6,330,497 ("the '497 patent"), 6,438,465 ("the '465 patent"), and 6,542,795 ("the '795 patent") unenforceable due to inequitable conduct.[1] The court also granted summary judgment of noninfringement of U.S. Patents 6,754,485 ("the '485 patent"), 6,987,964 ("the '964 patent"), 6,577,928 ("the '928 patent"), 6,524,794 ("the '794 patent"), and 6,275,231 ("the '231 patent") in favor of the defendants American Honda Motor Company, Incorporated and Honda of America Manufacturing, Incorporated (collectively, "Honda").[2] Further, the court granted summary judgment of infringement of U.S. Patent 6,587,759 ("the '759 patent").

---

[1] *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 577 (S.D. Cal. Nov. 3, 2008) ("*Inequitable Conduct Op.*").

[2] *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 333 (S.D. Cal. Apr. 24, 2008) ("*Car-Mail SJ Op.*"); *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 314 (S.D. Cal. Apr. 4, 2008) ("*Service Provider SJ Op.*"); *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 74 (S.D. Cal. July 10, 2007) ("*Radio SJ Op.*").

Following a trial, a jury found the asserted claims of the '497 patent invalid, and the asserted claims of the '465, '795, and '759 patents not invalid.[3] The district court denied Honda's renewed motion for judgment as a matter of law ("JMOL") or new trial on the validity of the '759 patent and entered judgment on that patent in favor of ACI.[4] ACI appeals the court's finding of inequitable conduct and the summary judgment of noninfringement. Honda cross-appeals from the court's JMOL decision. We affirm the court's summary judgment decisions on noninfringement, reverse the court's denial of JMOL on the validity of the '759 patent, vacate the district court's decision on inequitable conduct, and remand to the district court to decide the inequitable conduct issue under the guidelines of our recent *en banc* decision. *See Therasense v. Becton, Dickinson & Co.*, No. 2008–1511, slip op. (Fed. Cir. May 25, 2011).

### BACKGROUND

ACI asserted fifteen patents against Honda in this case, of which nine patents are at issue in this appeal. The patents relate to various aspects of vehicle computer systems. Figure 10 of the '465 patent illustrates the "Main Menu" screen of one such system.

---

[3] *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 538 at 3-8 (S.D. Cal. July 17, 2008) ("*Verdict Form*").

[4] *Am. Calcar v. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 613 (S.D. Cal. Mar. 10, 2009) (S.D. Cal. Nov. 17, 2009) ("*JMOL Op.*").



FIG. 10

The screen allows the user to select, obtain information, and control various features of the vehicle by touching the appropriate option on the screen.

### A. Car-Mail Patents

The '485 and '964 patents (the "Car-Mail patents") relate to notifying drivers about a "faulty condition," such as a condition for which the manufacturer issues a recall. The inventions attempt to solve the problem of misdelivering messages when the owner of the vehicle has changed. In doing so, the patented system sends the message to a vehicle specific address using electronic car-mail, also referred to as "C-mail," instead of to the e-mail address of the owner. Asserted claim 1 of the '485 patent is representative of the invention:

1. A method for facilitating maintenance of vehicles, comprising:

electronically sending, to vehicles, *messages* about a faulty condition of the vehicles, the *messages including identifiers of the vehicles*, respectively;

searching a database for data concerning correction of the faulty condition of the vehicles based on the identifiers, the data being contributed by one or more vehicle service providers;

determining, based on the data, identifiers of a subset of the vehicles which has not had the faulty condition corrected; and

performing one or more actions based on the identifiers of the vehicles in the subset.

'485 patent, claim 1 (emphases added). Dependent claim 2 recites that "the messages comprise addresses containing the respective identifiers of the vehicles to which the messages are electronically sent." *Id.* claim 2.

### B. Radio Patent

The '231 patent (the "Radio patent") is directed to a centralized entertainment system for use in vehicles to facilitate a user's control and management of entertainment program selection. Claim 21, from which asserted claims 25 and 26 depend, is reproduced below:

21. A system for use in a vehicle comprising:

a receiver for receiving signals from a *plurality of sources*, the plurality of sources providing a plurality of entertainment programs, respectively, the entertainment programs being classified in a plurality of categories based on contents of the entertainment programs, the receiver deriving, from the received signals, information identifying at least respective categories of entertainment programs provided by the sources; and

> an interface for presenting indicators representing respective ones of the plurality of sources, each indicator being selectable to receive entertainment programs from the source represented by the indicator, the indicators being arranged according to the respective categories of entertainment programs provided by the sources represented thereby.

'231 patent, claim 21 (emphasis added).

### C. Service Provider Patents

The '928 and '794 patents (the "Service Provider patents") are directed to identifying a service provider when it is determined that a vehicle needs service, and providing the user with information about the service provider when the vehicle is within a predetermined distance of the service provider. The invention employs a processor built into a vehicle to detect whether the vehicle requires maintenance. Asserted claim 1 of the '928 patent is representative of the invention:

> 1. A system for use in a vehicle comprising:
> a memory for storing information concerning a plurality of providers for servicing the vehicle;
> a device connected to one or more components of the vehicle for providing at least one measure concerning the vehicle;
> a processing element for determining based on the at least one measure a vehicle condition for which a selected service of the vehicle is needed, the processing element identifying one of the plurality of providers *in response to* the vehicle condition; and
> an interface for providing information concerning the identified provider from the memory *when* a location of the identified provider is within a pre-

determined distance from a current location of the vehicle.

'928 patent, claim 1 (emphases added). The related '794 patent claims selecting a service provider, monitoring the distance to that service provider and alerting the user. Claim 1 of the '794 patent includes a limitation reciting "a processor for selecting at least one service provider for servicing the vehicle *when* the vehicle needs a service." (emphasis added).

### D. Notable Condition Patent

The '759 patent (the "Notable Condition patent") is also directed toward a system that alerts the driver when a problem arises in the vehicle. The invention terms the problem, such as an overheated engine, as a "notable condition." Upon alert, the user can select an option that will display information on solving the problem ("coping information"). Figure 13 from the '759 patent illustrates a warning screen that a user may be presented with when a notable condition occurs.



FIG. 13

As shown, the TIP option (1303) appears on the upper-right corner of the screen when a notable condition arises. Clicking on the TIP option brings up information that will help the user address whatever notable condition has occurred. Asserted claim 1 is representative of the invention claimed by the '759 patent:

1. A system for use in a vehicle comprising:
a display element; an output element for providing information concerning at least one device in the vehicle;
a processor for identifying a notable condition of the vehicle;
a mechanism for providing an alert indicating the notable condition,
a provision of the information concerning the at least one device being interrupted by the alert;
and an interface for selecting an *option, which is provided on the display element* in response to the notable condition, *thereby prompting a user to se-*

> *lect the option* to obtain selected information to cope with the notable condition.

'759 patent, claim 1 (emphases added).

The prior art asserted by Honda against the '759 patent includes two Japanese publications that were not before the United States Patent and Trademark Office ("PTO"). Japanese Patent JP-H05-260605 ("Nihei") discloses a system for detecting a problem in a vehicle and helping the driver cope with it as shown in the Figure 4, reproduced below:



**Figure 4**

J.A. 1471. When a vehicle problem is detected, the system display flashes back-and-forth between the "normal" screen and the "warning" screen, which announces the problem and provides some information on the solution. J.A. 1461-63. At the bottom of the screen are buttons 6 and 7 that enable the user to either accept or decline the option of obtaining additional information on solving the problem (e.g., "Handling Method"). *Id.* The flashing screens are accompanied by an audible alarm. *Id.*

Japanese patent JP-H04-87839 ("Mitsubishi") claims a similar system wherein the user is alerted to the problem by displaying warning on a portion of the screen, as shown in Figure 6 of that patent:



FIG. 6

J.A. 1495. Pressing that portion of the screen displaying the warning ("warning button"), displayed here on the bottom left, for an extended period will result in a display of information on solving the problem. J.A. 1484-85. Simply tapping on the warning button momentarily will result in dismissing the warning and returning the user to the "normal" screen. *Id.*

The Honda system accused of infringing the '759 patent presents the following screen to a user when a notable condition is detected:



J.A. 1547. The user can obtain information on solving the problem by clicking on the "Check Now" button which is highlighted by a blue outline.

### E. Search Patents

The '465 and '795 patents ("the Search patents") relate to performing searches on a system in a vehicle. Claim 1 of the '465 patent is representative of the invention by the Search patents:

> 1. A system for use in a vehicle comprising:
> a memory for storing a plurality of displays having predetermined contents, the plurality of displays being associated with a plurality of aspects of the vehicle;
> *an interface for entering a query to conduct a search* concerning an aspect of the vehicle;
> an input device for *selecting a result of the search*;
> a processor responsive to the selected result for identifying at least one of the plurality of displays which is associated with the aspect of the vehicle; and
> a display element for showing thereon the at least one display.

'465 patent, claim 1 (emphases added).

In essence, the claimed system is one for searching topics relating to various aspects of the vehicle, wherein the user enters a topic into the search field and a list of search results is displayed to a user, who may then select one item from the list. The disclosed embodiment states that the user may enter only the first letter of the search term, and a list of items starting with that letter is instantaneously displayed. The specification also states that in the list of search results, the entered search item name is highlighted in yellow.

In May 1996, prior to the filing of any of ACI's patent applications, Honda's Acura division began to manufacture and sell the Acura 96RL model ("96RL") in the United States. That model had an "in-dash navigation" system that helped navigate drivers to their desired destinations. J.A. 1317. In doing so, the 96RL system allowed the users to search for destinations using a keypad on the touch screen of the system. The 96RL manual explains that as soon as the user enters the first letter of the search term into the keypad, the system generates a list of selectable options that begin with that letter. J.A. 2074. In the returned list of the search results, the closest match to the entered search term is highlighted in yellow. J.A. 2075.

## F. Three-Status Patent

The '497 patent ("the Three-Status patent") claims a system that allows a user to select an option from a list, to be shown a preview of information about it, and then to activate it. To the user, the first status is the unselected one, followed by the selected status, and then an activated status. Claim 1 of the '497 patent recites:

> 1.  A system for operating a device to perform a function in a vehicle comprising:
> a display element for displaying at least one option which is associated with the  function of the vehicle, the at least one option *indicating a first status*;
> a first interface for selecting the at least one option, the selected at least one option *indicating a second status*;
> an output element for providing information concerning the selected at least one option;
> a second interface for activating the selected at least one option, the activated option *indicating a third status*; and
> a processor for causing the device to perform the function after the selected at least one option is activated.

'497 patent, claim 1 (emphases added).   The disclosed embodiment explains that each status is indicated by a different color.  The embodiment uses the color yellow to indicate the selected option and the color blue to indicate the activated options.  *See, e.g.*, '497 patent, col.3 ll.58-66.  The 96RL system employs a similar three-status scheme to allow the user to interact with lists displayed by the system, and it uses the same color to indicate the same status as the '497 patent.  J.A. 1499.

### G.  Prosecution History

The inventors of the patents at issue, Michael Obradovich, John Dinkel, and Michael Kent, filed their first patent application (the "'355 patent application") on January 28, 1997, which issued as U.S. Patent 6,009,355 (the "'355 patent").  Continuations of the '355 patent became the '497, '465, '795, '928, and '794 patents, all of which share a common specification (collectively, the "'355

Patent Family"). At the time of filing the '355 patent application, the named inventors were employees of Calcar, Inc. ("Calcar"), ACI's predecessor. In the 1990s, Calcar developed and sold vehicle booklets that provided information specific to the vehicle and were included by some automobile manufacturers in the glove boxes of their vehicles. Honda's Acura division was one of Calcar's customers. In August 1996, one of the inventors of the patents at issue, Dinkel, was given use of an Acura 96RL vehicle. He drove the vehicle to Calcar's offices, and various employees, including the two other inventors of the patents at issue, Obradovich and Kent, inspected the car and drove it.

Shortly thereafter, Obradovich hired patent attorney Alex Yip and filed the '355 patent application. The application listed the 96RL navigation system in the background section as a commercially available system. The written description of the application is limited to the navigation aspect of the system, explaining how the system is able to receive satellite signals and verbally and visually communicate instructions to the user for reaching the desired destination. The specification also includes a figure prepared by Calcar's art department to illustrate the 96RL navigation system. *See* '355 patent, fig. 2. The specification does not detail any aspects of the user interaction of the 96RL system. Specifically, the inventors never disclosed to the PTO the aspects of the 96RL system relating to the three-status feature or the search feature. In 2008, a defendant in a different ACI litigation, BMW, initiated reexamination proceedings on the '355 and '497 patents, in response to which ACI submitted a copy of the 96RL manual and Honda's preliminary invalidity contentions from this case to the PTO.

### H. District Court Proceedings

Following a hearing on claim construction, the district court construed various claim terms that ACI challenges on appeal. *See Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 105 (S.D. Cal. Sept. 24, 2007) ("*Claim Construction Op.*"). The court construed the term "identifiers" in the Car-Mail patent claims as being unique to each vehicle. *Id.* at 29. It construed the term "messages" as "car-mail," and on further dispute between the parties concerning that term, the court construed the term messages to require that a message must include an address that uniquely identifies the vehicle to which the message is being sent and that the address be in the format "<vehicleid>@<domain>." *Car-Mail SJ Op.* at 8. The court rejected ACI's proposed construction of messages to mean "communications."

As for the Service Provider patents, the district court held that "identifying one of the plurality of providers in response to the vehicle condition" requires that "a processing element identifies a provider *in response to* a vehicle condition, *not in response to any action on the part of the user.*" *Claim Construction Op.* at 15 (emphases added). The court found that a skilled artisan would understand the claims as requiring a "cause-and-effect" relationship between the occurrence of the vehicle condition and the processor's identification or selection of the service provider. The court also held that the claim term "providing information concerning the identified provider from the memory *when* a location of the identified provider is within a predetermined distance" requires that "the information is provided after it is determined that the provider is within a predetermined distance from the vehicle and *without any intervening action* by the user." *Id.* at 16 (emphases added).

The district court construed the claim term "source" in the Radio patent to mean "an entertainment provider that broadcasts on a specified frequency from a fixed location." *Radio SJ Op.* at 4. The court rejected ACI's argument that a source could mean any point of information, such as a radio station, and was not necessarily limited to a broadcasting source. *Id.* at 6.

The district court granted summary judgment of noninfringement of five patents, namely the Car-Mail, Service Provider, and Radio patents. Regarding the Car-Mail patents, the court concluded that Honda's system does not use vehicle-address-based "car-mail" as claimed in the patents, but instead broadcasts information to selected geographic areas, and the information is received by every Honda vehicle within range. *See Car-Mail SJ Op.* at 8. With regard to the Service Provider patents, the court concluded that because Honda's system requires significant user interaction in order to find a service provider when the system identifies a need for maintenance, it does not infringe the claims literally. *Service Provider SJ Op.* at 6. It also reasoned that the prosecution history of the Service Provider patents barred ACI from asserting a doctrine of equivalents infringement theory. *Id.* at 7-8. The court granted summary judgment of noninfringement of the Radio patent because it concluded that accused systems do not "receive signals from a plurality of sources." *Radio SJ Op.* at 6. The court found that the accused systems employed satellite radio, wherein the signal was received from a single source. *Id.* The court also granted summary judgment of noninfringement under the doctrine of equivalents because it found that ACI had failed to provide particularized testimony and linking argument as to the equivalency of the Radio patent and the accused product. *Id.* at 8-9. The court, however, denied Honda's summary judgment motion on

invalidity of the Notable Condition patent. *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-CV-02433, Dkt. No. 142 (S.D. Cal. Apr. 28, 2008) ("*Notable Condition SJ Op.*"). In doing so, the court concluded that neither Nihei nor Mitsubishi taught the claim limitation "prompting a user to select the option," which the court construed as requiring a user prompt to select, not just any of the multiple displayed options, but only the one that led the user to a solution. *Id.* at 8-9.

The district court held a jury trial on numerous issues, including invalidity, infringement, damages, and inequitable conduct, although the parties agreed that the verdict on inequitable conduct would only be advisory. The jury found the Three-Status patent invalid as anticipated by the 96RL. *Verdict Form* at 3. The jury awarded $24 million in damages to ACI for the patents that had been found infringed and not invalid. *Id.* at 9. The jury also rendered advisory findings of no inequitable conduct by the inventors as to the Three-Status and Search patents. *Id.* at 12.

Following the verdict, the district court ruled on Honda's inequitable conduct motion, finding that the inventors had committed inequitable conduct in the prosecution of the '355 Patent Family, and therefore held the Three-Status patent as well as the Search patents unenforceable. *See Inequitable Conduct Op.* at 22. The court made numerous fact findings including that in August 1996, one of the inventors, Dinkel, had borrowed a 96RL vehicle and the inventors had spent between "30 minutes to an hour" in that car operating the navigation system. *Id.* at 3. The court found that Obradovich hired attorney Yip in October, 1996, but never informed him of his experience with the 96RL. *Id.* The court found evidence that the inventors continued to gather information on the 96RL system in November, 1996 and, in January

1997, Yip filed the '355 patent application. *Id.* The court found that in a prior litigation, ACI had produced several photographs that depict the dashboard of an Acura vehicle with a navigation system, including one photograph wherein the words "FIND CALCAR" had been entered as a search term on the system. *Id.* at 6. The court also found that the photographs were printed on paper stamped with Kodak insignia, reflecting Kodak's status as a sponsor of the 1996 Olympic games. *Id.* at 7. A copy of one of the photographs in the record is reproduced below.



The district court concluded that the operational details of the 96RL navigation system were in fact material to all three patent applications. It held that the 96RL's three-status feature mirrors the system described in Claim 1 of the '497 patent. *Id.* at 8. It also found that the 96RL's search and index feature was substantially similar to that claimed in the Search patents. *Id.* at 9. The court rejected ACI's arguments that other prior art submitted to the PTO, U.S. Patents 4,811,240 ("Ballou") and 4,827,520 ("Zeinstra"), were cumulative of the withheld information because it found that they do not disclose the index-type feature found in the 96RL and claimed in the Search patents. *Id.* at 10.

The district court found "notable" circumstantial evidence of deceptive intent, given that the inventors had operated the navigation system in the 96RL and that, given their prior business of developing car manuals, they had a great interest in learning about the navigation system and its functionality. *Id.* at 10-11. The court held that evidence supported Honda's position that, based on the "uncanny resemblance" between the two, the limited disclosure of the system in the '355 patent specification came from a 96RL manual to which the inventors must have had access. *Id.* at 14-16. Figure 2 from the '497 patent and the depiction of the 96RL system from its manual are reproduced below.



FIG. 2



**System Controls of the 96RL**

J.A. 2069. The court also found that Figures 17 and 18 of the Search patents, depicting the invention claimed in those patents, share distinct similarities with figures from the 96RL manual, supporting the inference that Calcar had the 96RL manual at the time of filing of the '355 patent application. *Inequitable Conduct Op.* at 17-19; *see also* '465 patent, figs. 17, 18; J.A. 2073-74. The court questioned the inventor's credibility and thus inferred intent to deceive from the various contradictory assertions made by Obradovich. *Inequitable Conduct Op.* at 22. The court noted that Obradovich had not been candid about the photographs of the 96RL system that had been in the possession of the inventors. *Id.* at 16. The court also rejected ACI's good faith arguments, including that it submitted the 96RL manual and Honda's invalidity contentions from this case to the PTO during a recent reexamination of the '497 patent, because those references did not provide the PTO with all of the relevant details about the 96RL. *Id.* at 21. Moreover, the court held that, given that the withheld information was highly material, less evidence of intent was required to reach a

finding of inequitable conduct. *Id.* at 22 (citing *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007)).

Honda also moved for JMOL of invalidity of the Notable Condition patent or, in the alternative, for a new trial. *JMOL Op.* at 1. The court denied the JMOL motion, concluding that the evidence of invalidity presented at trial, including the Nihei and Mitsubishi prior art patents and the expert testimony, when viewed in ACI's favor, was sufficient to support the jury's verdict that the Notable Condition patent was not invalid. *Id.* at 2.

ACI now appeals the district court's rulings on inequitable conduct, claim construction, and noninfringement of the various patents. Honda cross-appeals the court's denial of JMOL of invalidity of the Notable Condition patent. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

## I. Inequitable Conduct

ACI argues that the district court erred in holding three of ACI's patents unenforceable for inequitable conduct. ACI argues that the court's determinations on both materiality and intent are unsupported by clear and convincing evidence, and are also contrary to the jury's unanimous verdict on inequitable conduct.

As for materiality, ACI argues, the district court failed to identify the specific claims and limitations to which the undisclosed information was material and failed to appreciate that that information was cumulative of information already of record. As for intent, ACI argues that the district court's finding is based on a string of inferences that lack supporting evidence. ACI argues that the court failed to identify specific inventors who acted

with intent to deceive the PTO, instead simply stating that "Calcar" possessed the material information. According to ACI, the court's intent finding resulted from its unsupportable finding of knowledge combined with non-disclosure by the inventors. Moreover, ACI argues the court ignored all evidence of ACI's good faith, including the facts that ACI had commissioned a prior art search that was submitted to the PTO, that ACI's inventors had told its prosecuting attorney about the 96RL, and that the 96RL was expressly identified in the application. ACI therefore asks us to reverse the finding of inequitable conduct.

Honda responds that the undisclosed 96RL information was in fact material. It points out that the jury found the asserted Three-Status patent claims anticipated by the 96RL system. As for the Search patents, Honda argues that the similarity of Figures 17 and 18 of the patents to depictions in the 96RL manual illustrates the materiality of the undisclosed information. According to Honda, the only difference between what is claimed by the Search patents and the system disclosed in the 96RL manual is that the manual demonstrates searching destinations whereas the claims relate to searching information on various aspects of the vehicle. Honda contends that, contrary to ACI's claim, the undisclosed information is not cumulative of the Zeinstra and Ballou references because those references do not disclose presenting the search results to a user for selection.

Regarding the intent prong, Honda argues that there was compelling evidence to demonstrate a clear intent to deceive. Honda contends that Obradovich gave evasive and self-contradictory testimony under oath. According to Honda, the court's credibility determination, finding that Obradovich was not being completely candid, was based on Obradovich's ever-changing testimony that the court

evaluated in detail. Honda contends the district court's credibility determinations should be given deference. Honda points out that ACI could not explain the source or the remarkable similarity of the withheld information, including the 96RL manual and actual photos, to the patent specification. It contends that the photographs of the 96RL system, with the search term "FIND CALCAR," demonstrate how familiar the inventors had become with the 96RL system in contrast to the selective and partial disclosure of immaterial information that was made to the PTO. It points out that Obradovich testified that the photographs came from office files that contained "patent prosecution stuff." Honda further notes that ACI's post-trial assertion that the information came from a Motor-Trend article, a Honda exhibit, was in direct contradiction to ACI's earlier position, further supporting the court's finding on Obradovich's lack of credibility. Finally, Honda argues that per the parties' agreement, the jury verdict of no inequitable conduct was merely advisory and was in no way binding on the court.

As a preliminary matter we note that the advisory jury verdict on inequitable conduct was not binding on the district court. ACI argues that by disregarding the jury's verdict of no inequitable conduct, the district court prejudiced its Seventh Amendment interest in preserving the jury's verdict. We disagree. Inequitable conduct is equitable in nature, with no right to a jury, and the trial court has the obligation to resolve the underlying facts of materiality and intent. *See Duro-Last, Inc. v. Custom-Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir. 2003) (citing *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1584 (Fed. Cir. 1995)). Where a court submits the question to a jury, and both parties agree that the jury findings will be advisory, the court shall treat them as such. *Id.* That is the universal rule. *Heinze v. Butte & B. Consol. Mining*

*Co.*, 126 F. 1, 27 (9th Cir. 1903) ("Where a court sitting in equity allows a jury trial, the verdict is but advisory to the court, and in no sense binding."). The district court therefore was in no way bound by the jury's finding of no inequitable conduct in this case.

We have recently clarified the standards for determining materiality and intent that district courts should apply in resolving issues of inequitable conduct. *See Therasense*, slip op. at 24-35. To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO. *Id.* at 19 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). Under *Therasense*, the materiality required to establish inequitable conduct is, in general, but-for materiality. *Id.* at 27. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. *Id.*

While deceptive intent can be inferred from indirect and circumstantial evidence, that "inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific*, 537 F.3d at 1366. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision to* withhold a *known* material reference." *Therasense*, slip op. at 24 (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)).

Intent and materiality are separate requirements. *Id.* at 25 (citing *Hoffmann-La Roche, Inc. v. Promega Corp.*,

323 F.3d 1354, 1359 (Fed. Cir. 2003)). A district court should not use a "sliding scale," where a weak showing of intent may be found sufficient based on a strong showing of materiality, or vice versa. *Id.*

This court reviews a district court's determination of inequitable conduct under a two-tiered standard: we review the underlying factual determinations of materiality and intent for clear error, and we review the ultimate decision as to inequitable conduct for an abuse of discretion. *Star Scientific*, 537 F.3d at 1365. If the district court's inequitable conduct determination rests on a clearly erroneous finding of materiality or intent, it constitutes an abuse of discretion and must be reversed. *Id.*

We agree with Honda that the undisclosed 96RL information was material to the Three-Status patent because the jury found, and the court upheld, the asserted claims as anticipated by the 96RL system, and ACI has not appealed that decision to us. *See Therasense*, slip op. at 28 (holding that "if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the PTO.").

The materiality of the undisclosed information to the Search patent applications is a different matter. Even though the jury rejected Honda's invalidity arguments, both on anticipation and obviousness, as to the Search patents based on the 96RL system, the withheld information may be material if it would have blocked patent issuance under the PTO's preponderance of the evidence standard, giving those patents' claims their broadest reasonable construction. *Id.* We cannot infer that finding from the district court's opinion. Although we decide that

the district court properly concluded that the withheld information was not cumulative of any of the prior art of record, the court evaluated materiality of the 96RL information based on the PTO's Rule 56 standard and the "reasonable examiner" standard, both standards that we rejected in *Therasense*. slip op. at 23. We thus vacate the district court's findings of materiality as to the Search patents and remand to the district to decide the issue under the but-for materiality standard set forth in *Therasense*. On remand, the district court should determine whether the PTO would not have granted the Search patents but for Calcar's failure to disclose the 96RL information. We agree with the district court, and ACI does not dispute, that the 96RL search "function is substantially similar to the system described in the '465 and '795 Search patents," but the court failed to make a finding, as it did for the '497 patent, that the withheld information would have blocked issuance of the claims of the Search patents.

We also conclude that the district court applied an incorrect standard in determining specific intent to deceive the PTO by the ACI inventors. Under *Therasense*, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* at 24. Although the court performed a detailed analysis of the facts withheld, it made no holding that any of the inventors knew that the withheld information was in fact material and made a deliberate decision to withhold it. Instead, it relied on the sliding scale standard that we have rejected *en banc* in *Therasense, id.*, basing its finding of intent significantly on the materiality of the 96RL system to the claimed invention. The court's analysis went only to the extent of finding that the inventors "would have been interested in learning about the

96RL system," "had a significant amount of information about the 96RL," and "consider[ed] it as a base platform" for the invention. Although the court found Obradovich's testimony to be lacking in credibility, and we give considerable deference to that finding, *FilmTec Corp. v. Hydranautics*, 982 F.2d 1546, 1554 (Fed. Cir. 1992) ("We will not invade the province of the district court to judge matters of credibility."), that alone is insufficient to find specific intent to deceive under the knowing and deliberate standard. *See Therasense*, slip op. at 24-26. However, it is not our task to make factual findings, and we vacate the district court's finding of intent and remand the issue to the district court. *See Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1379 (Fed. Cir. 2010) (remanding the question of intent for the district court to make a finding on whether the inventor and his attorney had actually read the undisclosed portion of the prior art brochure in question, knew that information to be material, and deliberately withheld it; or, alternatively, whether they deliberately avoided reading the entire brochure in order to avoid learning damaging information). On remand the court should make a specific finding on whether any of the three inventors knew that withheld information was material and whether they made a deliberate decision to withhold it.

We therefore vacate the district court's finding of inequitable conduct and unenforceability of the '497, '465, and '795 patents and remand for further proceedings in accordance with this opinion.

## II. Noninfringement

ACI argues that the district court's summary judgment of noninfringement of five of ACI's patents by Honda's systems was based on incorrect claim construc-

tion.  It challenges the court's constructions of multiple claim terms.  We address each in turn.

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995) (*en banc*), which we review *de novo*, *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (*en banc*).  Although the claims of a patent define the invention which the patentee is entitled to exclude others from practicing, we must read the claims "in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-15 (Fed. Cir. 2005) (*en banc*) (quotations omitted); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history.").

## A.  Car-Mail Patents

ACI argues that the district court improperly limited the claim term "messages" based on the disclosed embodiments described in the specification.   According to ACI, the term simply means "communications" because the remainder of the claim defines what must be included in the messages, such as the identifiers of the vehicles, and there is no basis for requiring that the message

include an address in the format "<vehicle-id>@<domain>." ACI contends that when the inventors intended to include an address in the message, they did so by expressly reciting that requirement in a claim, such as in Claim 2 of the '485 patent. ACI also argues that there is no support for the court's construction of the term "identifiers" requiring that they be unique to each vehicle. ACI points out that the claims require only that the identifier be a part of the VIN that identifies a vehicle, and although the VIN itself may be unique, there is no requirement that the claimed identifier also be unique to every vehicle.

Honda responds that in construing the term "messages," the district court merely adopted the patentee's own definition. It points out that the specification emphasizes sending e-mail-like messages to cars, not people, and describes car-mail messages to be in the format vehicle-id@domain. According to Honda, such clarity indicates that it is a definition, not a mere example or preferred embodiment. Regarding "identifiers," Honda argues that a non-unique identifier of a car would render the entire notion of identification meaningless. Honda contends that, just as e-mail requires unique addresses, car-mail requires unique identifiers. In contrast, Honda continues, its system broadcasts data to all Honda vehicles and thus the court correctly found it to be noninfringing.

We agree with the district court that the messages claimed in the Car-Mail patents have to be in a format of <vehicle-id>@<domain>. The summary of the invention explains what a car-mail message is: "Like a conventional E-mail message, a C-mail message is formatted in accordance with *well known protocols* . . . the C-mail has an *address identifying the vehicle* itself. For example, the C-mail address may be made up of the vehicle identification

number (VIN) identifying the vehicle." '485 patent, col.2 ll.50-60 (emphases added). The definition that Honda points to comes in the detailed description of the invention: "However, in accordance with the invention, a C-mail address is in the format of <vehicle-id>@<domain>." *Id.* at col. 4 ll. 53-58; *see also* col.4 l.45 (comparing the format to a typical e-mail address format). Given the manner in which the specification emphasizes the similarity of a car-mail message to a typical e-mail message, it is essential that a car-mail message have an address that includes an identifier unique to the vehicle. *See Hologic, Inc. v. SenoRx, Inc.*, No. 2010-1235, 2011 WL 651791, at *8 (Fed. Cir. Feb. 24, 2011) (limiting the construction of a term where "the specification, including the figures, consistently and exclusively" disclose only one embodiment, and "that is clearly what the inventors of the . . . patent conceived of"); *see also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006). Thus, we conclude that the district court was correct in its construction of the two terms at issue.

In doing so, we also reject ACI's claim differentiation argument. ACI points out that claim 2 of the '485 patent adds the limitation that the message include addresses, and, therefore, this limitation cannot be included in independent claim 1, which is presumed to be broader than claim 2. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The doctrine of claim differentiation create[s] a presumption that each claim in a patent has a different scope."). However, the doctrine of claim differentiation is not a conclusive basis for construing claims, and the '485 patent specification overrides its effect here. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) ("Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated.").

It is undisputed that Honda's system does not send messages in the claimed format to its vehicles. Accordingly, we affirm the district court's summary judgment of noninfringement of the Car-Mail patents.

## B.  Radio Patent

ACI argues that the court construed the term "source" too narrowly, requiring that it broadcast from a fixed location and on a specified frequency. ACI contends that there is no "broadcast" or "fixed location" requirement in the claims, or that the signal be received directly from the originating source. ACI proposes that the term "source" refers to any point from which information originates. ACI therefore argues that Honda's accused satellite radio receivers that receive a single signal containing multiple radio channels from a satellite meet the claim limitation of "plurality of sources." At least, ACI argues, there is a question of fact as to whether the accused XM Satellite Radio ("XM") receivers meet the limitation under the doctrine of equivalents, and the court therefore erred in granting summary judgment of noninfringement.

Honda responds that the claims are directed to receiving signals, not information or programs, and that the court was correct in limiting the claims in that manner. Honda argues that its XM radio system receives a single signal from single source, and that it is irrelevant that the single signal is comprised of content from multiple content sources. Honda further argues that its accused system cannot infringe under the doctrine of equivalents because a signal from one source cannot be equivalent to multiple signals from multiple sources; such a finding would vitiate that claim limitation.

We agree with the district court that the claimed "source" in the Radio patent refers to a fixed source of broadcast on a specified frequency. The specification

characterizes sources as radio stations with limited geographic coverage, explaining how a user can lose the radio signal by travelling outside the coverage area. '231 patent, col.20 ll.46-48. The patent also discloses the use of a frequency scanner to find and list radio stations in the receiving range. *Id.* at 49-51. In light of this disclosure, it was proper to limit the term "source" in the manner that the district court did. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (en banc) ("[We] may reach a narrower construction, limited to the embodiment(s) disclosed in the specification, when the claims themselves, the specification, or the prosecution history clearly indicate that the invention encompasses no more than that confined structure or method."). ACI's broad reading of the term "source" as any source of information is not supported by the specification.

It is undisputed that the accused satellite radio receiver in the Honda vehicles receives one signal, from the XM Programming Center. It is the Programming Center that collects content from various sources and combines them into a single signal. The accused receivers may receive that single signal either from a satellite or from terrestrial "repeaters" on the ground, but it is always a single signal. Thus, the district court was correct in concluding that the accused receivers do not receive signals from a "plurality of sources."

We also reject ACI's doctrine of equivalents argument. The "essential inquiry" in any determination under the equivalents doctrine is whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). We have assessed the insubstantiality of an alleged equivalent by applying the function-way-result test as set forth in *Union Paper-Bag Machine Co. v.*

*Murphy*, 97 U.S. 120, 125 (1877), which asks whether an element of an accused product "performs substantially the same function in substantially the same way to obtain the same result" as an element of the patented invention. *See, e.g.*, *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008).

The district court found that ACI had failed to meet its evidentiary burden of demonstrating by particularized testimony that the accused receivers perform substantially the same function in substantially the same way to obtain the same result as the claimed system. *Radio SJ Op.* at 8. We agree. We have held that "a patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the "function, way, result" test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). The same rule applies in the summary judgment context. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). Here, ACI was required to provide particularized testimony and linking argument to show the equivalence of the XM Programming Center and a plurality of broadcast sources. The only evidence proffered by ACI on the issue of equivalents was the declaration from the inventor Obradovich in which he stated that the XM Programming Center is, at most, insubstantially different from the claimed plurality of sources. J.A. 261. Such generalized testimony as to the overall similarity between the claims and the accused infringer's product from one of the inventors does not suffice to create a genuine issue of material fact. *See Texas Instruments*, 90

F.3d at 1567.  Moreover, we agree with Honda that find-
ing a signal from one source to be equivalent to "signals
from a plurality of sources" would vitiate that claim
limitation by rendering it meaningless.  Such a theory of
equivalence is legally insufficient.  *See DePuy Spine v.*
*Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed.
Cir. 2006).  We therefore affirm the district court's sum-
mary judgment of noninfringement of the Radio patent.

### C.  Service Provider Patents

ACI argues that the district court imported negative
limitations into the claims of the Service Provider patents
by incorrectly construing the terms "in response to" and
"when."  ACI contends that the term "identifying one of
the plurality of providers in response to the vehicle condi-
tion" simply connotes a cause-and-effect relationship
between the first and second event.  Likewise, ACI ar-
gues, the claim language "selecting at least one service
provider for servicing the vehicle when the vehicle needs a
service" requires only that one event happen before the
other.  The district court, ACI argues, improperly added a
limitation that there must not be any intervening action
by the user between the two events.  Further, ACI con-
tends that the court misread prosecution history to find a
disclaimer that the inventors did not make.  In distin-
guishing prior art U.S. Patent 6,240,365 ("Bunn"), ACI
continues, the inventors said nothing about user interven-
tion and only highlighted the fact that the claimed inven-
tion embodied a cause-and-effect relationship.  Thus, ACI
continues, the district court erred in concluding that the
patentee had relinquished any intervening steps by the
user, and thus in its summary judgment of noninfringe-
ment.

Honda responds that the district court properly con-
strued the claims to require a cause-and-effect relation-

ship.  Honda points out that the claim requires that the processor identify a provider directly in response to a vehicle condition.  Honda contends that the accused system identifies a service provider only in response to a user request asking the system to find a service provider, not in response to the occurrence of any vehicle condition, and thus does not infringe the Service Provider patents. As for infringement under the doctrine of equivalents, Honda argues that the inventors conceded that claim scope when they distinguished Bunn, in which the identification by the processor was in response to a user request rather than to the occurrence of a maintenance condition. Moreover, Honda argues that the difference between the claimed system and the accused system in terms of what causes the identification is substantial.

We agree with the district court's claim construction and its finding of prosecution history estoppel.  "In response to" connotes that the second event occur in reaction to the first event.  The language of the claim itself suggests that when a vehicle condition is detected, the processing element identifies a provider automatically as opposed to requiring further user interaction.  Further, the specification fails to disclose any embodiment that requires any type of user interaction prior to identification of a service provider.  *See, e.g.*, '928 patent, col.10 l.68-col.11 l.5.    Thus, the court properly construed the claim terms "in response to" and "when" to require a cause-and-effect relationship.

Honda's accused system on the other hand requires a user to initiate a search for a provider by taking several steps.  The user has not only to detect and select the message indicating that maintenance is required, but also has to select one of four options to ask the system to "Find Nearest Acura Dealer."  Thus, when the user is presented with identification of the service provider, it is not "in

response" to the vehicle condition, as required by the claims, but rather, in response to user actions. ACI proposes that we ignore several intervening events that may or may not occur between the two relevant events. We are not persuaded to do so.

We also agree with the district court that ACI is barred from asserting an infringement claim under the doctrine of equivalents. The doctrine of equivalents prohibits one from avoiding infringement liability by making only "insubstantial changes and substitutions . . . which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950). But the doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002)). During prosecution of the Service Provider patents, the examiner rejected certain claims as anticipated by Bunn. In distinguishing Bunn to the examiner, the ACI inventors stated:

> Bunn further teaches away from the claimed invention in that any service provider identified in Bunn in a POS transaction *is in response to a vehicle renter's selection of a service* shown on a display, *rather than in response to a vehicle condition determined by a processor*, based on a measure concerning the vehicle as in the claimed invention.

J.A. 1020-21 (emphases added). That remark to the Patent Office clearly and unmistakably surrendered

subject matter that ACI now seeks to claim, *i.e.*, where the identification of service providers is brought about in response to the user.  ACI argues that what its inventors distinguished was simply the cause-and-effect relationship resulting from the determination of a vehicle condition by the processors.  We disagree.  Bunn employed a similar local control system in the vehicle to monitor vehicle condition and also allowed the user to search and select service providers on the system.  The inventors' disclaimer was thus broad, distinguishing the claimed invention as one where the identification of service providers is solely in response to a vehicle condition determined by a processor.  *See Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826-27 (Fed. Cir. 1999) ("The scope of estoppel, i.e., what subject matter has been surrendered during prosecution by the patentee, is to be viewed from the vantage point of a reasonable competitor of the patentee.").  Thus, we agree with the district court's finding of noninfringement of ACI's Service Provider patents by Honda's accused systems.

### III. Honda's Cross-Appeal

### Invalidity of the '759 Notable Condition Patent

We review the denial of a JMOL motion *de novo*, applying the law of the regional circuit, in this case, the Ninth Circuit.  *Harris Corp. v. Ericsson lnc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005).  Under Ninth Circuit law, a jury verdict "must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).  JMOL should be granted only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004).  Section 102(b) provides

that "[a] person shall be entitled to a patent unless . . . the invention was . . . described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). To be anticipatory, a reference must describe, either expressly or inherently, each and every claim limitation and enable one of skill in the art to practice an embodiment of the claimed invention without undue experimentation. *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).

Honda argues that the district court erred in the construction of the claim term "prompting a user to select the option" by requiring that the system prompt not just any option, but the one option that would provide coping information. Honda argues that the court improperly required something more than the mere display of the option and that there is no support for that in the specification. Under the correct construction, Honda contends that Nihei does exactly what the patented system does—it displays a button to bring up coping information and provides an audible alert. That sufficiently prompts a knowledgeable user to obtain coping information as required by the asserted claims. Likewise, Honda continues, Mitsubishi displays a selectable button for coping information and prompts the user to select it by providing detailed language as well as displaying it persistently until the user selects it. Honda therefore argues that both Nihei and Mitsubishi anticipate the '759 patent claims and that substantial evidence does not support the jury's verdict to the contrary.

ACI responds that the claim language is unambiguous and does not require a knowledgeable user, and thus that it was proper for the district court to conclude that the prompt be for the specific coping option and no other option on the screen. ACI points out that in the Nihei

warning screen, "key 7" is highlighted, accompanied by a continuous alarm sound, prompting the user to dismiss the alert. Thus, ACI argues, Nihei does not teach the limitation in dispute. ACI further contends that because intuitively touching the warning button in Mitsubishi clears the warning, that prior art also does not disclose the prompting limitation. ACI argues that it presented substantial evidence to support its position at the trial and that the jury's finding should be upheld.

We agree with Honda that the district court erred in its claim construction of the "prompting" limitation and that under a proper construction Nihei anticipates the asserted '759 patent claims. In initially denying Honda's motion for summary judgment of invalidity, the court held that the "prompting" limitation of the '759 patent claims was not met by Nihei. *Notable Condition SJ Op.* at 8. In doing so, the court concluded that the claims required that the user be prompted to select "the" coping option, not just "any" option. *Id.* We disagree because there is nothing in the specification that supports such a reading of the claims. The only embodiment disclosed by the inventors indicates that the TIP option, the option that leads to the coping information, is displayed in the same manner as various other options. *See* '759 patent, fig. 13. There is no indication in the written description that the TIP option is different from any of the other options in such a manner that it prompts the user to select it over other options for obtaining coping information.

The district court mistakenly read the word "the" in the phrase "prompting . . . to select *the* option" to mean "only that" option, whereas that word simply refers back to the prior phrase "*an* option . . . is provided." *Notable Condition SJ Op.* at 8. Honda points out that ACI itself, in making infringement contentions against Honda's system, asserted that the "prompting" was met simply

because the user is moved to select *one* of the two options on Honda's warning screen. J.A. 1549-50. Although the court agreed with ACI at that stage, it erred in its claim construction at the summary judgment stage by importing an unnecessary limitation into the '759 patent claims. The court's subsequent jury charge, and therefore its JMOL ruling on the issue of validity, relied on the court's erroneous construction. *JMOL Op.* at 2.

Under the correct claim construction, it is clear that Nihei meets the only disputed limitation of the asserted claims. In Nihei, the warning screen flashes back and forth with the normal screen giving a visual indication to the user that there is an issue. J.A. 1346. On the warning screen is button 6 that allows the user to quickly obtain coping information. In addition to the flashing, the warning screen is accompanied by an audible alarm as in the disclosed embodiment of the '759 patent. J.A. 1345. Nihei explains that "providing a screen switching key 6 on the warning screen 2 and causing the warning screen 2 to switch to the detail screen 3 by pushing the screen switching key 6, necessary information can be extracted without the complicated operations previously required, and the burden on the monitoring person can be reduced." J.A. 1467. That is all that is needed to meet the disputed limitation in the '759 patent claims.

ACI presented expert testimony that the warning sound in Nihei would be so loud that it would cause the user to decline the option by pressing reset button 7. That assertion was based on the expert's belief that Nihei was intended for use in nuclear power facilities where a loud alarm may be required. However, we see nothing in Nihei that suggests an annoying volume of alarm that would prompt the user to decline the option. The actual application that Nihei may have been employed in is irrelevant to the issue of anticipation. As long as the

reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates. *In re Gleave*, 560 F.3d at 1334. Moreover, the '759 patent itself teaches that in selecting an alarm sound, the user should preferably choose one that connotes "urgency or even emergency." J.A. 1406. Thus, we find ACI's expert testimony to be contrary to the express teachings of the prior art.

In conclusion, the jury's verdict that the '759 patent is not invalid as anticipated by Nihei is against the great weight of the evidence, and it is quite clear to us that, based on the district court's erroneous claim construction, the jury reached a erroneous result. We therefore reverse the district court's denial of Honda's JMOL motion on the invalidity of the '759 patent and hold that the asserted claims of the '759 patent are invalid as anticipated.

## CONCLUSION

We have considered ACI's remaining arguments and do not find them persuasive. Accordingly, the judgment of the district court is

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**

## COSTS

Costs to Honda.