# United States Court of Appeals for the Federal Circuit

---

**1ST MEDIA, LLC,**
*Plaintiff-Appellant,*

v.

**ELECTRONIC ARTS, INC.,
HARMONIX MUSIC SYSTEMS, INC., AND VIACOM, INC.,**
*Defendants-Appellees,*

AND

**SONY COMPUTER ENTERTAINMENT AMERICA, INC.,**
*Defendant-Appellee.*

---

2010-1435

---

Appeal from the United States District Court for the District of Nevada in No. 07-CV-1589, Judge James C. Mahan.

---

Decided: September 13, 2012

---

ROBERT P. GREENSPOON, Flachsbart & Greenspoon, LLC, of Chicago, Illinois, argued for plaintiff-appellant. Of counsel was WILLIAM W. FLACHSBART.

ERIC A. BURESH, Erise IP, P.A., of Leawood, Kansas, argued for all defendants-appellees. With him on the brief for Sony Computer Entertainment America, Inc., was ABRAN J. KEAN. Of counsel was B. TRENT WEBB, Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri. On the brief for Electronic Arts, Inc., et al., were RICHARD F. ZIEGLER, Jenner & Block LLP, of New York, New York, and BENJAMIN J. BRADFORD, of Chicago, Illinois. Of counsel was JOHN JOSEF MOLENDA, of New York, New York.

––––––––––––––––

Before RADER, *Chief Judge*, LINN and WALLACH, *Circuit Judges*.

LINN, *Circuit Judge*.

1st Media, LLC ("1st Media") is the assignee of U.S. Patent No. 5,464,946 ("'946 Patent") and appeals from the United States District Court for the District of Nevada's dismissal of 1st Media's complaint alleging infringement of the '946 Patent by Electronic Arts, Inc., Harmonix Music Systems, Inc., Viacom Inc., and Sony Computer Entertainment America LLC (collectively "Appellees"). *1st Media v. doPi Karaoke, Inc.*, No. 07-cv-1589 (Apr. 23, 2010) ("*1st Media*"). The court found that during prosecution of the '946 Patent, the named inventor, Dr. Scott Lewis ("Lewis"), and his attorney, Joseph Sawyer ("Sawyer"), withheld from the United States Patent and Trademark Office ("PTO") three material references and information about PTO rejections in two related prosecutions, thereby committing inequitable conduct and rendering the '946 Patent unenforceable. Because the record contains no evidence of a deliberate decision to withhold those references from the PTO as required under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc), and because Appellees admit that the record is complete, this court reverses.

## I.  BACKGROUND

The '946 Patent is titled "System and Apparatus for Interactive Multimedia Entertainment" and covers an entertainment system for use in purchasing and storing songs, videos, and multimedia karaoke information.  On Lewis's behalf, Sawyer filed the application that led to the '946 Patent ("'946 Application") on November 13, 1992.  On September 14, 1994, the examiner rejected all claims of the '946 Application as anticipated or obvious in view of five prior art references.  To overcome the rejections, Sawyer argued on February 21, 1995, that the claimed entertainment system included a multimedia call processing system, an element not found in the cited references.  He also amended current claim 16 to limit it to karaoke devices.  The examiner responded by issuing a Notice of Allowance on May 2, 1992; Sawyer paid the issue fee on August 1, 1995; and the PTO issued the '946 Patent on November 7, 1995.

While the '946 Application was pending, Sawyer prosecuted a number of other patent applications for related inventions made by Lewis.  The applications relevant to this appeal are: (1) International Patent Application No. PCT/US93/10930 ("PCT Application"); (2) U.S. Patent Application No. 07/975,824, which became U.S. Patent No. 5,325,423 ("'423 Patent"), and; (3) U.S. Patent Application No. 08/265,391, which became U.S. Patent No. 5,564,001 ("'001 Patent").

The PCT Application, as filed on November 11, 1993, was identical to the as filed '946 Application, but was never amended to add the karaoke limitation.  In a June 25, 1995, supplemental search report, a European Patent Office ("EPO") examiner cited as prior art International Publication WO 90/01243 ("Bush"), noting that Bush was a category "Y" reference, meaning it was particularly relevant if combined with another document of the same

category. Sawyer received the supplemental European report citing Bush on July 24, 1995, eight days before he paid the issue fee for the '946 Patent. Neither Lewis nor Sawyer ever disclosed the Bush reference to the PTO and Bush was not considered during the course of examination of the '946 Application. The EPO ultimately rejected the PCT Application on November 3, 1998, citing Bush as the closest prior art document.

Lewis filed the application that led to the '423 Patent ("'423 Application") on the same day as the '946 Application. Large portions of the '423 Patent's specification are identical to the '946 Patent. Those portions include descriptions of terms Lewis coined—"interactive multimedia mastering system" ("IMM"), a "multimedia call processing system" ("MCPS"), and "interactive multimedia devices" ("IMD"). *Compare* '946 Patent col. 4 l. 62-col. 11 l. 63, *with* '423 Patent col. 6 l. 4-col. 13 l. 24. On July 16, 1993, an examiner rejected several claims of the '423 Application as anticipated by U.S. Patent No. 5,027,400 ("Baji"), which discloses what the examiner considered to be an IMM, MCPS, and IMD—the same components of the karaoke device covered by claim 16 of the '946 Patent. On October 29, 1993, Sawyer responded to the rejection by cancelling the rejected claims. The '423 Patent issued on June 28, 1994. Neither Lewis nor Sawyer ever disclosed Baji to the PTO, and the PTO did not consider the reference during prosecution of the '946 Patent.

On June 24, 1994, Lewis filed the application leading to the '001 Patent ("'001 Application") as a continuation-in-part of the '423 Application. On June 12, 1995, an examiner contended that the IMM, MCPS, and IMD structures, to the extent claimed, were disclosed in U.S. Patent No. 5,220,420 ("Hoarty") and rejected independent claim 1 of the '001 Application as obvious in view of Hoarty. On September 12, 1995, Sawyer replaced claim 1 with new claim 40, distinguishing Hoarty while retaining

the IMM, MCPS, and IMD limitations. The '001 Patent ultimately issued on October 8, 1996. Neither Lewis nor Sawyer ever disclosed Hoarty to the PTO, and the PTO did not consider the reference during prosecution of the '946 Patent.

On November 29, 2007, 1st Media filed a complaint in the United States District Court for the District of Nevada alleging infringement of at least claim 16 of the '946 Patent. Appellees asserted an inequitable conduct defense and also counterclaimed for declaratory judgment of inequitable conduct. The court bifurcated the case, focusing initial proceedings on the question of inequitable conduct. 1st Media moved to put its evidence on first, arguing that "[c]ommon sense dictates that a patentee should inform the Court of the background circumstances of patent procurement *before* an infringer steps in to attack the patentee." Pl.'s Mot. *In Limine* #1: To Confirm the Normal Order of Proofs at 2, *1st Media* (Aug. 21, 2009), ECF No. 204. Appellees opposed the motion, arguing that because they had the burden to prove inequitable conduct, they should present their evidence first. The court agreed with the Appellees and held a bench trial on February 25 and 26, 2010, allowing Appellees to begin with a direct examination of Lewis.

At trial, Appellees alleged five incidents of inequitable conduct, three based on the failure to cite references, and two based on the failure to disclose rejections in the '423 and '001 Patent prosecutions that respectively brought to light two of those references. Because the Appellees do not rely on appeal on the non-disclosure of the rejections themselves as a basis for affirming the district court's decision, we consider those grounds conceded and address only the allegations of inequitable conduct relating to the three references noted. Appellee's Br. 55 n.18.

With respect to the three references, both Lewis and Sawyer testified that they did not appreciate the materiality of any of them. Lewis testified under direct examination by Appellees that nondisclosure of the Bush reference was "an oversight that got lost in the cracks at that time and wasn't a conscious decision not to report [it]." Tr. of Inequitable Conduct Hr'g, Day One at 183, *1st Media* (Feb. 25, 2010), ECF No. 267 ("Day One Tr."). Although Sawyer testified that he could not recall why he did not disclose the Bush reference, Appellees pointed to his previous declaration in which he claimed that "the Bush publication itself never sparked an awareness or belief in my mind that Bush should be disclosed." Tr. of Inequitable Conduct Hr'g, Day Two at 134, *1st Media* (Feb. 26, 2010), ECF No. 270 ("Day Two Tr."). Sawyer also testified that he generally considered patentability issues in a case only during what he termed "active prosecution," or the time between the first office action and the notice of allowance. *Id.* at 149. During the time period that Sawyer was prosecuting the '946 Patent, he had newly set up a solo office out of his home and characterized his practice as being at times "very active." *Id.* at 153 (Sawyer's testimony that he was handling about 170 open prosecution files by the end of 1995). As for the Baji and Hoarty references, Lewis and Sawyer each testified that the technology in the co-pending '423 and '001 Applications was so distinct from the '946 Application that it did not occur to them to disclose Baji or Hoarty during prosecution of the '946 Patent.

The district court found their explanations not credible. Findings of Fact and Conclusions of Law Following Trial on Inequitable Conduct at 4, *1st Media* (Apr. 23, 2010), ECF No. 276 ("Findings") ("Dr. Lewis and Mr. Sawyer offered explanations for their failure to disclose the material prior art . . . that were not credible. . . . Mr. Sawyer's explanation, like Dr. Lewis' . . . was neither factually nor legally sufficient to explain the failure to

disclose the Bush Reference, which was highly material."); *id.* at 4-5 ("As to Baji [and] Hoarty . . . Dr. Lewis and Mr. Sawyer suggested that they viewed the technology at issue in their co-pending applications as so distinct from that of the '946 application . . . that 'it did not occur to them' to make any disclosures about Baji [or] Hoarty . . . . That explanation, which defied common sense in light of the extensive overlap in the applications and claims, was fully discredited at trial."). The district court found that Lewis and Sawyer knew the references were material and concluded that because they failed to provide a credible good faith explanation for non-disclosure of the references, it was appropriate to infer that they intended to deceive the PTO during prosecution of the '946 Patent. *Id.* The district court thus concluded that Lewis and Sawyer committed inequitable conduct. The court allowed Appellees to draft proposed findings of fact and conclusions of law. The court adopted those findings verbatim, granted Appellees' requested declaratory judgment of inequitable conduct, held the '946 Patent unenforceable, and dismissed 1st Media's complaint. 1st Media appealed and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

"This court reviews a district court's determination of inequitable conduct under a two-tiered standard: we review the underlying factual determinations of materiality and intent for clear error, and we review the ultimate decision as to inequitable conduct for an abuse of discretion." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011) (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). "A factual finding is clearly erroneous if, despite some supporting evidence, 'the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1359 (Fed. Cir. 2007) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). Even when a party drafts proposed findings of fact and conclusions of law, "[o]nce adopted, the findings are those of the court and may be reversed only if clearly erroneous." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 572 (1985). "A district court abuses its discretion when its decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary or fanciful." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

## B. Analysis

This court's recent opinion in *Therasense* changed the standard for proving inequitable conduct based on nondisclosure of a reference to the PTO. 649 F.3d at 1290-91. Under the *Therasense* standard, absent affirmative egregious misconduct, a defendant must prove by clear and convincing evidence both of the "separate requirements" that: (1) "the patentee acted with the specific intent to deceive the PTO"; and (2) the non-disclosed reference was but-for material. *Id. Therasense* explained that in order to show that the patentee acted with the specific intent to deceive the PTO, a defendant must prove "that the applicant knew of the reference, knew that it was material, and *made a deliberate decision to withhold it*." *Id.* at 1290 (emphasis added). A failure of proof on any element precludes a finding of inequitable conduct. *See id.* ("Proving that the applicant knew of a reference, *should have known* of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." (emphasis added)). "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be

'the single most reasonable inference able to be drawn from the evidence.'" *Id.* (quoting *Star Scientific*, 537 F.3d at 1366). A court can no longer infer intent to deceive from non-disclosure of a reference solely because that reference was known and material. *Id.* Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence. *See id.*; *Star Scientific*, 537 F.3d at 1368.

The district court issued its opinion in this case before this court's *Therasense* opinion, and this court must now determine whether, under the standard set forth in *Therasense*, the record here supports the district court's conclusion that Lewis and Sawyer committed inequitable conduct.

1st Media argues that the district court's finding of inequitable conduct cannot be sustained because the court did not find that either Lewis or Sawyer made a deliberate decision to withhold the three known material references from the PTO. 1st Media accuses Appellees of conflating the requirement to show intent to deceive with the requirement to show materiality and argues that *Star Scientific*'s single most reasonable inference standard cannot substitute for *Therasense*'s requirement that the defendant prove that the patentee made a deliberate decision to withhold a known material reference in order to deceive the PTO. Finally, 1st Media cites *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984), to argue that the Appellees cannot satisfy their burden to show a deliberate decision to withhold references merely from the fact that the testimony of Lewis and Sawyer was discredited.

Appellees admit that they have no direct evidence that Lewis or Sawyer intended to deceive the PTO. *See* Oral Arg. at 32:23, *available at* http://www.cafc.uscourts.

gov/oral-argument-recordings/2010-1435/all. They contend instead that the way in which Lewis and Sawyer became aware of the references, coupled with statements they made during prosecution of the '946 Patent, demonstrate the necessary mens rea from which the district court permissibly could have inferred a deliberate decision to withhold the references regardless of the exact words the district court used. *See Therasense*, 649 F.3d at 1291. Appellees also argue that by seeking to present its evidence and explanations first at trial, 1st Media conceded that Appellees had made a threshold showing of intent to deceive. Finally, Appellees argue that the record adequately supports the district court's credibility determinations and its determination that both Lewis and Sawyer failed to provide a good faith explanation for their nondisclosure of the references in question.

### 1. Order of Proof at Trial

As an initial matter, 1st Media's motion to present its proofs first did not concede that Appellees had met their threshold burden of showing an intent to deceive by clear and convincing evidence. *See id.* at 1290. Nothing in 1st Media's motion can be construed as a concession that Appellees had met that burden. 1st Media's motion was a procedural request to implement what it believed would be an orderly and efficient presentation of evidence. Appellees' request for this court to read something substantive into 1st Media's procedural request lacks justification. Thus, we turn to the merits of each alleged act of inequitable conduct.

### 2. Bush

1st Media argues that the evidence fails to support an inference of an intent to deceive the PTO by Lewis and Sawyer's failure to disclose the Bush reference. 1st Media specifically points to Sawyer's testimony that he did not

learn of Bush until after he received the notice of allow-ance of the '946 Patent and at a time period when his practice was "very active." Moreover, 1st Media empha-sizes that Bush was reported as being a category "Y" reference and therefore of particular relevance only when combined with some other reference. Finally, 1st Media points out that Sawyer's foreign patent counsel ("Wright") indicated that Bush was of limited relevance.

Appellees stress that the district court rejected Lewis's and Sawyer's explanations. *See* Findings at 4-5, 16-18. They contend that the district court was free to conclude that Sawyer made a deliberate decision to with-hold Bush based on the fact that he received the EPO search report identifying Bush and identifying "specific page, line and figure numbers in Bush as particularly relevant to *as-filed* claims 1-5 and 18 of the EPO counter-part" eight days before he paid the issue fee for the '946 Patent. Appellee's Br. 13 (emphasis added). Finally, Appellees disagree with 1st Media's characterization of the "Y" designation and 1st Media's interpretation of Wright's comment. According to Appellees, Sawyer was already aware of other references with which Bush might be combined, and Wright's comment meant that Bush was only relevant to certain claims, specifically claim 16 of the '946 Patent.

At trial, Appellees argued that they met their thresh-old burden of showing Lewis and Sawyer's intent to deceive the PTO regarding Bush by demonstrating that Lewis and Sawyer knew of its relevance but did not disclose it to the PTO. Day One Tr. at 40 ("They knew Bush was relevant to claim 18 [(current claim 16)] accord-ing to the European patent office, but they didn't disclose it to [the examiner] who was also you [sic] looking at the exact same claim. *That's a prima facie showing of inequi-table conduct*." (emphasis added)). The district court accepted this argument. *See* Findings at 7 ("Intent may

be inferred where non-disclosed information is material and where knowledge of the information and its materiality is chargeable to the applicant."); *id.* at 16 ("The materiality of the Bush Reference and the knowledge of that materiality by Dr. Lewis and Mr. Sawyer have been proven by clear and convincing evidence. Where the party asserting inequitable conduct establishes a threshold level of materiality and intent based on predicate facts, the inquiry next turns to the . . . [patentee's] explanation that its conduct was in good faith.").

As noted, *supra*, this court has now made clear that "[t]o prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. Moreover, "[a] finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (1988)). "'In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference.'" *Id.* (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (1995)). The district court's "Intent To Deceive" analysis regarding Bush analyzed only "1. Knowledge of Materiality," and "2. Lewis and Sawyer's Explanations." Findings at 15-18. Significantly, however, the district court, following pre-*Therasense* precedent, did not discuss or consider whether there was any deliberate decision on either Lewis's or Sawyer's part to withhold the Bush reference from the PTO.

This court cannot sustain the district court's decision. Knowledge of the reference and knowledge of materiality alone are insufficient after *Therasense* to show an intent to deceive. Moreover, it is not enough to argue carelessness, lack of attention, poor docketing or cross-

referencing, or anything else that might be considered negligent or even grossly negligent. To sustain a charge of inequitable conduct, "clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Molins*, 48 F.3d at 1181. Whatever one might conclude about Lewis's and Sawyer's conduct and interactions relating to the Bush reference, and the nature of Sawyer's practice at the relevant time, the record does not support the inference that Lewis and Sawyer deliberately chose to withhold Bush. *See Therasense*, 649 F.3d at 1290. Lewis did not testify that he thought that Bush was relevant to the '946 Patent's prosecution in 1995; he only testified that he knew of "some rejections related to a patent in Europe, and it was the Bush patent." Day One Tr. at 92. But the PCT Application was not rejected based on Bush until 1998. Lewis could not recall whether he had reviewed the EPO search report identifying Bush; he testified only that the report is something that he would have reviewed if Sawyer had sent it to him. *Id.* at 93. The record does not contain any letter from Sawyer to Lewis at that time informing Lewis of the EPO search report or Bush. Oral Arg. at 19:45-20:25. Lewis then testified that "given the details of the Bush [reference] that [he] know[s] now," he now thinks that Bush was "relevant." *Id.* at 100.

While Sawyer testified that it was his standard practice to make sure he cited to the PTO prior art cited in corresponding foreign applications if he knew that prior art was material, Day Two Tr. at 129-30, Appellees point to no evidence to suggest that Sawyer must have deliberately withheld Bush from the PTO.

The record in this case is unlike that in *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1335-36 (Fed. Cir. 2012), in which this court affirmed the district court's inequitable conduct determination. In that case there was affirmative conduct by the applicants showing

not only specific awareness of materiality, but careful and selective manipulation of where, when, and how much of the most material information to disclose. *Id.* at 1336. Evidence of such selective disclosure is not present here. With regard to Bush, the evidence shows, at best, that Lewis and Sawyer knew Bush was material. An applicant's knowledge of a reference's materiality, however, cannot by itself prove, let alone clearly and convincingly prove, that any subsequent non-disclosure was based on a deliberate decision. Otherwise, the third element in *Therasense*'s intent to deceive analysis would be satisfied in any case in which the second element was satisfied. This would effectively eviscerate *Therasense*'s test for mens rea and reinflict the plague of patent unenforceability based on the thinnest of speculation regarding the applicant's putative mental state. *See Therasense*, 649 F.3d at 1290.

The district court's analysis in this case thus falls short of what *Therasense* now requires. We need not decide whether it was clear error for the district court to infer that Lewis and Sawyer knew that the Bush reference was material because nowhere in the district court's analysis did it cite any evidence of a deliberate decision to withhold Bush from the PTO, or anything that would support such an inference. And the district court clearly erred in relying on Lewis and Sawyer's inability to offer a good faith explanation as a basis to infer a deliberate decision to withhold Bush. *See Therasense*, 649 F.3d at 1290; *see also Am. CalCar*, 651 F.3d at 1335 ("Although the court found [the inventor's] testimony to be lacking in credibility, and we give considerable deference to that finding, . . . that alone is insufficient to find specific intent to deceive under the knowing and deliberate standard." (internal citation omitted)); *Star Scientific*, 537 F.3d at 1368 ("The patentee need not offer any good faith explanation unless the accused infringer first carried his bur-

den to prove a threshold level of intent to deceive by clear and convincing evidence.").

### 3. Baji

The district court's intent to deceive analysis regarding Baji is similarly flawed. Appellees argue that Lewis and Sawyer were aware of Baji based on its citation in a July 13, 1993, rejection of claims in the '423 Application. They further contend that Baji discloses an MCPS and that Lewis and Sawyer's February 21, 1995, argument to the PTO that the five references cited by the examiner do not have an MCPS is sufficient circumstantial evidence from which the district court could infer a deliberate decision to withhold Baji. 1st Media counters by pointing to Lewis's and Sawyer's testimony that they did not appreciate the materiality of the Baji reference and that they each viewed the inventions claimed in the '423 and '946 Applications to relate to distinct technologies. Moreover, 1st Media contends that even if the district court did not credit Lewis's and Sawyer's testimony, that fact cannot be used as affirmative evidence of the opposite conclusion.

We agree with 1st Media. Here, there is no evidence, such as the evidence of a selective disclosure that occurred in *Aventis Pharma*, suggesting that Lewis and Sawyer must have deliberately withheld Baji. 675 F.3d at 1336. That Lewis's and Sawyer's testimony was not credited by the district court does not overcome the shortcomings in Appellees' proof. And the fact that Baji was not mentioned in an argument dealing with a rejection based on five other references nearly a year and a half after Baji first came to Lewis's and Sawyer's attention does not in and of itself suggest that the single most reasonable inference is a deliberate decision to deceive. The district court's contrary finding is clearly erroneous.

## 4. Hoarty

Finally, Appellees argue that Lewis and Sawyer intended to deceive the PTO by not disclosing Hoarty, which an examiner cited in a June 12, 1995, rejection of claims in the '001 Application. Appellees fault Lewis and Sawyer for not disclosing Hoarty when the examiner's rejection clearly drew their attention to IMM, IMD, and MCPS networks contended to be similar to networks disclosed in the Hoarty reference. 1st Media counters by citing Lewis's and Sawyer's testimony that they did not appreciate Hoarty's materiality and by arguing that Hoarty is not analogous to the invention claimed in the '946 Application.

Appellees' argument again falls short. Hoarty was not brought to the attention of Lewis and Sawyer until *after* they had made the argument during prosecution of the '946 Patent and received the Notice of Allowance, albeit *before* they paid the issue fee. Moreover, the record shows that the IMM, IMD, and MCPS limitations were not determinative of patentability of the '001 Patent, meaning that there was nothing to single out Hoarty for special attention. At bottom, there is simply no evidence that Lewis and Sawyer deliberately withheld Hoarty from the PTO, and there can be no inference that they intended to deceive the PTO.

Ultimately, for all of the references, the evidence supports only that Lewis and Sawyer (1) knew of the references, (2) may have known they were material (which this court does not reach), and (3) did not inform the PTO of them. But that is not enough. As *Therasense* made clear, a defendant must prove that an applicant (1) "knew of the reference," (2) "knew it was material," and (3) "made a *deliberate decision* to withhold it." 649 F.3d at 1290 (emphasis added). It is the last requirement that is missing from the record developed in this case.

At oral argument, Appellees admitted that they took full discovery on inequitable conduct and informed this court that the record is complete.  Oral Arg. at 19:20-20:50.  Because Appellees cannot prove on this record that either Lewis or Sawyer made a deliberate decision to withhold references from the PTO and because Appellees acknowledged that the record is complete, this court reverses.  We need not decide whether any of the references were but-for material.

CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed.

**REVERSED**