# United States Court of Appeals for the Federal Circuit

---

**INTELLECT WIRELESS, INC.,**
*Plaintiff-Appellant,*

**v.**

**HTC CORPORATION AND HTC AMERICA, INC.,**
*Defendants-Appellees.*

---

2012-1658

---

Appeal from the United States District Court for the Northern District of Illinois in No. 09-CV-2945, Senior Judge William T. Hart.

---

Decided: October 9, 2013

---

MEREDITH MARTIN ADDY, Steptoe & Johnson LLP, of Chicago, Illinois, argued for plaintiff-appellant. With her on the brief was AMANDA K. STREFF. Of counsel on the brief were RAYMOND P. NIRO and PAUL K. VICKREY, Niro, Haller & Niro, of Chicago, Illinois.

STEPHEN S. KORNICZKY, Sheppard Mullin Richter & Hampton, LLP, of San Diego, California, argued for defendants-appellees. With him on the brief were MARTIN R. BADER and MATTHEW M. MUELLER. Of counsel on the brief were NAGENDRA SETTY and GEORGE KANABE, of San

Francisco, California. Of counsel was GRAHAM MARC BUCCIGROSS, of San Diego, California.

––––––––––––––––––

Before PROST, MOORE, and O'MALLEY, *Circuit Judges.*

MOORE*, Circuit Judge.*

Intellect Wireless, Inc. (Intellect) appeals from the district court's judgment that U.S. Patent Nos. 7,266,186 ('186 patent) and 7,310,416 ('416 patent) are unenforceable due to inequitable conduct. We *affirm*.

BACKGROUND

The technology at issue in this case involves wireless transmission of caller identification (ID) information. The asserted patents share the same specification, which discloses providing caller ID information from a message center to a personal communication device, such as a cell phone, via a wireless network. '186 patent, at [57]; *id.* col. 4. l. 66 - col. 5 l. 4. The specification also teaches displaying the caller ID information on the cell phone's screen. *Id.* col. 15 ll. 20–24. Claim 1 of the '186 patent is representative:

A wireless portable communication device for use by a message recipient for receiving a picture from a message originator having a telephone number, comprising:

a receiver *operably coupled to receive a message from a message center over a wireless connection, the message including a non-facsimile picture supplied by the message originator and a caller ID automatically provided by a communications network* that identifies the telephone number of the message originator, the message originator sending the caller ID with the picture to the message center;

a display; and

a controller operably coupled to *display the picture and caller ID on the display*.

'186 patent, claim 1 (emphasis added).

Intellect sued HTC Corporation and HTC America, Inc. (HTC) for patent infringement. After a bench trial, the district court held the asserted patents unenforceable due to inequitable conduct by the sole inventor, Mr. Daniel Henderson. *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056 (N.D. Ill. 2012).

Intellect appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive" the U.S. Patent and Trademark Office (PTO). *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012). "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Therasense, Inc v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc). "We review the district court's ultimate finding of inequitable conduct for abuse of discretion, and review the underlying findings of materiality and intent for clear error." *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1357 (Fed. Cir. 2013).

## I. Materiality

The district court held that HTC proved the materiality prong of inequitable conduct. The court found that Mr. Henderson submitted to the PTO a declaration under 37 C.F.R. § 1.131 (Rule 131) containing false statements. To

overcome a prior art reference during prosecution, Mr. Henderson averred that "the claimed invention was actually reduced to practice and was demonstrated at a meeting . . . in July of 1993." J.A. 7731 ¶ 9. However, the district court found that the claimed subject matter was never actually reduced to practice. *Intellect*, 910 F. Supp. 2d at 1071–72; *see* J.A. 2169; J.A. 5389; J.A. 5470. The court also found "no evidence that any of the false statements in any of the declarations were actually withdrawn, specifically called to the attention of the PTO or fully corrected." *Intellect*, 910 F. Supp. 2d at 1072.

Intellect argues that the district court clearly erred in its materiality finding. Intellect contends that Mr. Henderson's prosecuting attorney quickly corrected the false declaration by filing a revised Rule 131 declaration, which did not include facts supporting actual reduction to practice. *See* J.A. 7742–846. It argues that the attorney explained to the Examiner that the applicant was relying on constructive reduction to practice. Intellect contends that, after the asserted patents issued, the Examiner confirmed that he relied on constructive, as opposed to actual, reduction to practice. Intellect lastly argues that the district court discounted evidence that the remaining reference to "actual reduction to practice" in the revised declaration was an inadvertent mistake.

HTC counters that the district court did not clearly err when it found materiality because Mr. Henderson filed multiple unmistakably false declarations during prosecution. Specifically, it argues that Mr. Henderson falsely claimed actual reduction to practice in the original Rule 131 declaration in order to overcome a prior art reference. HTC points out that the revised declaration still referred to "actual reduction to practice." HTC argues that Mr. Henderson made this false assertion during prosecution of other family patents, which suggests that this language was not mere drafting error. HTC contends that neither Mr. Henderson nor his attor-

ney expressly advised the PTO about the misrepresentations during prosecution, as required to cure the misconduct. It further argues that Mr. Henderson's post-issuance efforts to clarify the record do not cure the misconduct because they are self-serving statements made during litigation.

We agree with HTC. It is undisputed that Mr. Henderson's original declaration was unmistakably false. Absent curing, this alone establishes materiality. There is no dispute in this case that Mr. Henderson did *not* actually reduce the claimed invention to practice—nor did he demonstrate a prototype in July of 1993. Thus, the original declaration contains multiple unmistakably false statements. *See* J.A. 7731 ¶¶ 9, 10, 11 ("the claimed invention was actually reduced to practice and was demonstrated at a meeting"; "the working prototype demonstration included communicating information from a calling party connected to a communications network that provided caller identifying information to a called party"; referring to a device that "displayed the caller identification and associated image information transmitted via a wireless network"). Intellect argues that Mr. Henderson's revised declaration and subsequent statements to the PTO corrected these misrepresentations. We do not agree.

When an applicant files a false declaration, we require that the applicant "expressly advise the PTO of [the misrepresentation's] existence, stating specifically wherein it resides." *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983). Further, "if the misrepresentation is of one or more facts, the PTO [must] be advised what the actual facts are." *Id.* Finally, the applicant must "take the necessary action . . . openly. It does not suffice that one knowing of misrepresentations in an application or in its prosecution merely supplies the examiner with accurate facts without calling his attention

to the untrue or misleading assertions sought to be overcome, leaving him to formulate his own conclusions." *Id.*

The district court did not err in concluding that Mr. Henderson's revised declaration failed to correct the falsehoods in the original declaration under the *Rohm & Haas* standard. *See Intellect*, 910 F. Supp. 2d at 1071–73. At best, the revised declaration obfuscated the truth. It mentioned "diligence from the date of conception to the effective filing date," implying that Mr. Henderson was now relying upon constructive reduction to practice. J.A. 7745. But the revised declaration did not cure the misconduct because it never expressly negated the false references to actual reduction to practice in the original declaration. In the original declaration, Mr. Henderson told the PTO that he actually reduced the invention to practice and demonstrated it at a meeting in July of 1993. *See* J.A. 7731 ¶ 9. In the revised declaration, he described a "prototype now in the Smithsonian that was in development for a . . . demonstration" in July of 1993, a statement that could be read to mean that a device embodying the claimed invention was actually built during that month. J.A. 7746 ¶ U. The revised declaration also described a "product brochure and packing receipt," which further implied the existence of an actual working device. J.A. 7747 ¶ GG; J.A. 7852–57. Finally, the revised declaration expressly mentioned "actual reduction to practice" and "bringing the claimed subject matter to commercialization," further obscuring the truth. J.A. 7747 ¶ 11; J.A. 7748 ¶ 12. Most importantly, the declaration nowhere expressly stated the actual facts, which are that "neither [Mr. Henderson] nor Intellect Wireless actually reduced to practice" the inventions claimed in the asserted patents. J.A. 2169. Nowhere did the declaration openly advise the PTO of Mr. Henderson's misrepresentations, as our precedent clearly requires. *See Rohm & Haas*, 722 F.2d at 1572.

Intellect asserts that Mr. Henderson's attorney "specifically advised the Examiner on multiple occasions of the mistaken claim of actual reduction to practice." Intellect Br. 35. But the record contradicts Intellect's position. The prosecution history of the asserted patents is devoid of any statement by Mr. Henderson openly admitting that he did not actually reduce the claimed invention to practice. Mr. Henderson's attorney testified that, in a phone call, he told the Examiner that the "revised declaration had none of the actual reduction to practice elements in it" because "Mr. Henderson had some misgivings about the actual reduction to practice." J.A. 4026. And Mr. Henderson claims that the Examiner allowed the claims based on constructive reduction to practice. *See id.*; *see also* J.A. 5602 ("[The Examiner] told us that he had considered only constructive reduction to practice . . . ."); J.A. 7982 (indicating reliance on the revised declaration). Neither the PTO nor the public was apprised of the falsehoods in Mr. Henderson's declarations and told the actual facts. Thus, the district court correctly found that "[a] full disclosure or correction of the record was never made." *Intellect*, 910 F. Supp. 2d at 1074. We hold that the district court did not clearly err in concluding that HTC proved materiality by establishing that Mr. Henderson engaged in affirmative egregious misconduct when he filed a false declaration.

We note that *Therasense* in no way modified *Rohm & Haas*'s holding that the materiality prong of inequitable conduct is met when an applicant files a false affidavit and fails to cure the misconduct. *Therasense* expressly cited *Rohm & Haas* with approval and made clear that filing a false affidavit is exactly the sort of "affirmative act[] of egregious misconduct" that renders the misconduct "material." 649 F.3d at 1292. Indeed, *Therasense* quoted *Rohm & Haas* for the proposition that "there is no room to argue that submission of false affidavits is not material." *Id.* (quoting 722 F.2d at 1571) (internal quota-

tion marks omitted). The district court was faithful to the requirements articulated in *Rohm & Haas*. Given the false statements and the clear failure to do what is necessary according to our precedent to cure the misconduct, the argument that materiality has not been established is entirely without merit.

## II. Intent

The district court found that Mr. Henderson acted with specific intent to deceive the PTO. *Intellect*, 910 F. Supp. 2d at 1073–74. The court found that, in addition to misrepresentations during prosecution of the asserted patents, Mr. Henderson made false statements regarding actual reduction to practice during prosecution of related patents in order to overcome prior art. For example, during prosecution of another patent in the family, Mr. Henderson submitted a declaration stating that he had constructed a handheld device that "displayed . . . message information transmitted via the wireless network." *Id.* at 1062–63; *see* J.A. 21910 ¶ 11. However, the court found that no such transmission took place—the device only contained preloaded images for the purpose of demonstration. *Intellect*, 910 F. Supp. 2d at 1071.

During prosecution of still another patent in the family, Mr. Henderson submitted a press release to the PTO stating that the Smithsonian acquired "two prototypes . . . for a pioneering picturephone technology developed in 1993." J.A. 25811. The district court found that this statement was misleading because Mr. Henderson gave the Smithsonian a device identified as "Intellect prototype" in 2003, and later gave the Smithsonian imitation smartphones made of wood and plastic. *Intellect*, 910 F. Supp. 2d at 1067–68. To be clear, the wood and plastic imitation smartphones were not capable of performing the claimed functions. The court found that, given the pattern of false and misleading statements during prosecution of related patents, Mr. Henderson's explanations for

the misrepresentations during prosecution of the asserted patents were not credible. *Id.* at 1073. The court therefore concluded that intent to deceive the PTO was the single most reasonable inference from Mr. Henderson's false assertions. *Id.*

Intellect argues that there was no specific intent to deceive. It contends that Mr. Henderson's multiple attempts to correct the record demonstrate that intent to deceive is not the most reasonable inference. Intellect argues that Mr. Henderson's attorney explained that he made an inadvertent mistake in the original declaration by including references to actual reduction to practice. Intellect further argues that the court ignored evidence that the Examiner relied on constructive, rather than actual, reduction to practice. It contends that these facts demonstrate that the district court's finding that Mr. Henderson intended to defraud the PTO was not the most reasonable inference.

Intellect also contends that the court's findings regarding a pattern of deceit are erroneous. Intellect argues that, even though a device that Mr. Henderson used in his demonstration contained only preloaded images, that feature is consistent with the specification's teaching that the device can display a "preselected image, such as an icon." '186 patent, col. 39 ll. 18–19. It argues that the Smithsonian press release is irrelevant because it was submitted after the asserted patents were allowed, during prosecution of a later application. With regard to statements about actual reduction to practice in the revised declaration, Intellect contends that the district court should have drawn the inference that it was a "copy-and-paste" error. It further argues that the court's finding that Mr. Henderson lacked credibility was clear error because HTC failed to prove that deceit was deliberate.

We see no clear error in the district court's fact finding on intent. Submission of an affidavit containing

fabricated examples of actual reduction to practice in order to overcome a prior art reference raises a strong inference of intent to deceive. *See Rohm & Haas*, 722 F.2d at 1571. Further, Mr. Henderson engaged in a pattern of deceit, which makes the inference stronger. In order to obtain claims directed to wireless transmission in several related patents, Mr. Henderson told the PTO that he built a device that could receive images via wireless transmission. *See, e.g.*, J.A 17001–02 ¶¶ 5–13 (U.S. Patent No. 7,426,264); J.A. 21910 ¶ 11 (U.S. Patent No. 7,251,318); J.A. 24136–37 ¶¶ 5–13 (U.S. Patent No. 7,454,000). Nevertheless, the device was, at best, a "simulation"—it contained only preloaded images and was not capable of wireless communication. *See, e.g.*, J.A. 5449–52; J.A. 5461–65; J.A. 5535; *see also Intellect*, 910 F. Supp. 2d at 1071 ("Whatever . . . data was pre-loaded in the device, the means, a wireless network or telephone, did not exist in July of 1993 to transmit caller ID information, a picture, an image or an emoticon."). Intellect's argument that the declaration "satisfies the specification" fails because the patent *claims* are directed to wireless communication. *See, e.g.*, U.S. Patent No. 7,251,318, claim 1 (reciting a "communications network to wirelessly transmit the caller ID and the picture from the message center to the wireless portable communication device"). While the misleading Smithsonian press release was submitted after the asserted patents were allowed, it reinforces the pattern of deceit.

Moreover, the district court's finding of intent could be affirmed based on the content of the two declarations. The completely false statements in a first declaration were followed by a replacement declaration that, rather than expressly admitting the earlier falsity, dances around the truth. The second declaration, which claims to rely on constructive rather than actual reduction to practice, continues to reference a "prototype" (that was never built), a "product brochure" (even though there was

no product), and "commercialization" (that never occurred). J.A. 7746 ¶ U; J.A. 7747 ¶ GG; J.A. 7748 ¶ 12. As discussed earlier, neither Mr. Henderson nor his attorney told the Examiner the truth. Thus, the district court did not clearly err in concluding that specific intent to deceive the PTO was the most reasonable inference from Mr. Henderson's conduct.

The district court also did not err when it decided not to credit Mr. Henderson's explanations for the repeated submission of false affidavits. "[C]redibility determinations are an aspect of fact-finding that appellate courts should rarely reverse." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1368 (Fed. Cir. 2008). The pattern of deceit supports the court's finding that Mr. Henderson's explanations for making false statements during prosecution of the asserted patents are not credible.

CONCLUSION

We have considered the parties' remaining arguments and do not find them to be persuasive. We *affirm* the district court's judgment that the asserted patents are unenforceable due to inequitable conduct.

**AFFIRMED**