# United States Court of Appeals for the Federal Circuit

---

**AMERICAN CALCAR, INC.,**
*Plaintiff-Appellant,*

**v.**

**AMERICAN HONDA MOTOR CO., INC., AND
HONDA OF AMERICA MANUFACTURING, INC.,**
*Defendant-Appellee.*

---

2013-1061

---

Appeal from the United States District Court for the Southern District of California in No. 06-CV-2433, Judge Dana M. Sabraw.

---

Decided: September 26, 2014

---

ROBERT L. MAIER, Baker Botts L.L.P. of New York, New York, argued for the plaintiff-appellant. With him on the brief was JENNIFER C. TEMPESTA.

ROBERT E. HILLMAN, Fish & Richardson P.C., of Boston, Massachusetts, argued for defendant-appellee. With him on the brief was JOHN T. JOHNSON, of New York, New York. Of counsel was MICHAEL F. AUTUORO.

---

Before PROST, *Chief Judge,*[*] NEWMAN and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.
Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Chief Judge.*

American Calcar Inc. ("Calcar") appeals from the judgment of the U.S. District Court for the Southern District of California finding that U.S. Patent Nos. 6,330,497 ("'497 patent"), 6,438,465 ("'465 patent"), and 6,542,795 ("'795 patent") were unenforceable due to inequitable conduct. For the reasons stated below, we affirm.

I

This appeal arises from Calcar's suit against defendant-appellees American Honda Motor Co., Inc. and Honda of America Manufacturing, Inc. (collectively "Honda"), asserting the infringement of fifteen patents—of which three remain at issue. All share a common specification and are derived from a priority application filed on January 28, 1997, which since issued as U.S. Patent No. 6,009,355 ("'355 patent"). The patents describe and claim aspects of a multimedia system for use in a car to access vehicle information and control vehicle functions.

Calcar accused computerized navigation systems installed in Honda vehicles of infringing its patents. Calcar claimed that the accused systems included additional infringing features beyond providing the driver with travel directions. Honda responded with various defenses, including non-infringement, invalidity, and inequitable conduct. The case was transferred to the district court

[*]    Sharon Prost assumed the position of Chief Judge on May 31, 2014.

from the Eastern District of Texas in 2006. Over the course of the proceedings thereafter, Calcar dropped certain patents, summary judgment was granted finding others to be invalid or non-infringing, and finally, in 2008, four patents went to trial.

Before trial, Honda moved for a finding of inequitable conduct. Honda's motion was based on the actions of Calcar's founder, Mr. Obradovich. Among the three co-inventors, Mr. Obradovich was the one primarily responsible for preparing the patent application. Honda alleged that he deliberately withheld prior art that was material to patentability from the U.S. Patent and Trademark Office ("PTO"). Specifically, Honda argued that while Mr. Obradovich disclosed the existence of the 1996 Acura RL ("96RL") navigation system, he intentionally did not disclose additional information that would have led the PTO to deny the patent as anticipated or rendered obvious by the system.

In 1996, Honda added the navigation system as an option for the Acura RL. At the time, Calcar was publishing "Quick Tips" guides: booklets with condensed information from a car's owner's manual. During the course of developing a QuickTips guide for the 96RL, Mr. Obradovich drove the car and operated the navigation system, and Calcar personnel took photographs of the navigation system and owner's manual. Subsequently, Mr. Obradovich began working on the parent application that ultimately issued as the '355 patent. The application explicitly referred to the 96RL system as prior art, and Mr. Obradovich acknowledged that the system was used as the basis of Calcar's inventions. Honda alleged that Mr. Obradovich knew that the owner's manual and photographs were in Calcar's possession and deliberately withheld them during prosecution. Honda argued that the operational details that he did not disclose were precisely those that were the claimed in the patents at issue—the use of the system to display the status of

vehicle functions (claimed by the '497 patent) and to search for information about the vehicle (claimed by the '465 and '795 patents).

The jury ultimately found the '497 patent invalid, and it found the '465 and '795 patents valid. After the trial ended and the jury rendered its verdict, the district court granted Honda's inequitable conduct motion and, therefore, held the patents at issue unenforceable. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, No. 06-cv-02433 (S.D. Cal. Nov. 3, 2008), ECF No. 577 ("*Calcar I*"). Calcar then appealed to this court.

While the appeal was pending, this court established a revised and narrower test for inequitable conduct in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc). In light of *Therasense*, we affirmed the district court's finding of the materiality of the prior art with respect to the '497 patent, and vacated the district court's other determinations of materiality and intent. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318 (Fed. Cir. 2011) ("*Calcar II*"). On the question of the materiality of the prior art as to the '465 and '795 patents, we remanded for the district court to determine whether the patents would have been granted "but for" the information that the applicant did not disclose, following the test for materiality set forth in *Therasense*. *Id.* at 1335. With respect to the applicant's specific intent to deceive the PTO, we vacated as to all three patents and remanded to the district court to "make a specific finding on whether any of the three inventors knew that the withheld information was material and whether they made a deliberate decision to withhold it." *Id.* at 1335-36.

On remand, the district court asked the parties for additional briefing and held a hearing in March 2012. The district court again found that the three patents at issue were obtained through inequitable conduct, detailing its findings of fact and conclusions of law in an opin-

ion spanning over twenty pages. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, No. 06-cv-2433, 2012 WL 1328640 (S.D. Cal. Apr. 17, 2012) ("*Calcar III*").

The district court found that but for the information about the prior art withheld by Mr. Obradovich, the PTO would not have granted the '465 and '795 patents. *Id.* at *8. It made further findings as to all three patents regarding Mr. Obradovich's specific intent to deceive the PTO, concluding that the only reasonable inferences from the evidence were that Mr. Obradovich knew that the prior art was material to his invention and that he made a deliberate decision to withhold material information. *Id.* at *9-10. It also found that evidence of Mr. Obradovich's good faith did not overcome this other evidence, nor did it create a reasonable inference that Mr. Obradovich may have been merely negligent or grossly negligent. *Id.* at *11. Having made findings on each prong of the *Therasense* standard, the district court once again concluded that the patents are unenforceable due to inequitable conduct.

Calcar appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II

Inequitable conduct is an equitable defense to patent infringement. *Therasense*, 649 F.3d at 1285. The defendant proves inequitable conduct "by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013). Intent and materiality must be separately established. *Therasense*, 649 F.3d at 1290. On appeal, we review the district court's findings of materiality and intent for clear error. *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013). We review the district court's ultimate finding of inequitable

conduct based on those underlying facts for abuse of discretion. *Id.*

## A. MATERIALITY

This court held in *Therasense* that the standard for "the materiality required to establish inequitable conduct is but-for materiality." 649 F.3d at 1291. In particular, undisclosed prior art is "but-for material if the PTO would not have allowed a claim had it been aware of" it. *Id.* This means that to assess materiality, the court must look to the standard used by the PTO to allow claims during examination. To wit: "The court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction." *Id.* at 1291-92. District courts and the PTO employ different evidentiary standards and rules for claim construction. Therefore, "even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards." *Id.* The jury's verdict finding the patents at issue non-obvious thus does not weigh on the determination of materiality for inequitable conduct, and indeed, Calcar does not make any arguments on appeal that rely on the jury's determination.

As an initial matter, we have already held that the prior art "96RL search function is substantially similar to the system described in the '465 and '795 patents." *Calcar II*, 651 F.3d at 1335. The case was remanded because the district court had not made a specific finding that the "withheld information would have blocked issuance of the claims" of said patents. *Id.*

Claim 1 of the '465 patent is representative of the patents for which materiality is at issue on appeal (emphasis added):

1. A system for use in a vehicle comprising:

a memory for storing a plurality of displays having predetermined contents, the plurality of displays being associated with a plurality of aspects of the vehicle;

an interface for entering a query to conduct *a search concerning an aspect of the vehicle*;

an input device for selecting a result of the search;

a processor responsive to the selected result for identifying at least one of the plurality of displays which is associated with the aspect of the vehicle; and

a display element for showing thereon the at least one display.

The highlighted text shows the only difference between the prior art and the claim—as even Calcar concedes. As the district court noted, Calcar does not dispute that the 96RL navigation system "includes an interface for entering a query to conduct a search, an input device for selecting a result of the search, a processor that identifies a display associated with the selection, and an element that allows that display to be shown to the user." *Calcar III*, at *8. Therefore, the only limitation that Calcar claims as novel is that the object of the user's search has to be "an aspect of the vehicle." Claim 1 of the '765 patent similarly includes only the limitation of searching for and displaying information about an "aspect of the vehicle."

Calcar's principal argument is that the district court improperly failed to account for the inventive differences between the prior art 96RL navigation system and the claims of the '465 and '795 patents. Calcar points to examples listed in the patent's specification, such as the ability to retrieve such features as climate control functions, "the radio, the engine, and other aspects of the vehicle." Appellant's Br. 52. Calcar argues that the search for information regarding such aspects of the

vehicle is a non-obvious invention that was merely based on the 96RL system. The district court did address the differences between the 96RL system and what Calcar actually claimed. It found that the only difference was "the nature of the information contained in the systems": navigational details (destinations, addresses, directions) in the 96RL system and information about the vehicle itself in the '465 and '795 patents. *Calcar III*, at *8. The district court found that the PTO would have not allowed the patents as "it would have been obvious to a person of ordinary skill in the art to include different information in the 96RL navigation system." *Id.*

As the district court stated, the 96RL and Calcar's patented system "perform the same function, *i.e.*, delivery of information, in the same way, *i.e.*, through an interactive display screen, to achieve the same result, namely providing information to the vehicle user." *Id.* Calcar argues that by using the language "same function" "same way" "same result," the district court improperly applied a doctrine of equivalents analysis to the question of obviousness. We find this argument unavailing. That sentence just summarizes why the mere substitution of one kind of information as the object of the search—which, under a broadest reasonable interpretation of the claim, could be *anything* about the car—would be an obvious, and thus unpatentable, invention.

Because the district court did not commit clear error in its finding of materiality, we affirm the district court's determination that the undisclosed operational details of the 96RL navigation system are material to the patentability of the '465 and '795 patents. We note that this court previously affirmed the finding of materiality as to the '497 patent. *Calcar II*, 651 F.3d at 1334.

## B. INTENT

Calcar provided a limited disclosure of the 96RL navigation system in the patents' specification, and it also submitted a *New York Times* article describing the system during prosecution. As the district found, however, these disclosures exclude material information about the 96RL system, such as the manner in which the prior art system provided notifications to the user and displayed search results. *See Calcar III*, at *8; *Calcar II*, 651 F.3d at 1332-34. Partial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1335-36 (Fed. Cir. 2012); *see also Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1376 (Fed. Cir. 2000) (finding intent where the patentee disclosed a complete reference in Japanese but did not provide translations of that part which was material to patentability); *Apotex Inc. v. UCB, Inc.*, No. 13-1674, 2014 WL 3973498, at *8 (Fed. Cir. Aug. 15, 2014) (finding intent on the basis of an inventor misrepresenting material information about disclosed prior art).

We recognize instead that "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence," provided that such intent is the single reasonable inference. *Therasense*, 649 F.3d at 1290-91. We further review "the district court's factual findings regarding what reasonable inferences may be drawn from the evidence for clear error." *Id.* at 1291.

In the previous appeal, we noted that based on its review of the record, the district court found that Mr. Obradovich's testimony lacked credibility. *Calcar II*, 651 F.3d at 1335. It had inferred intent based on contradictory assertions made by Mr. Obradovich in both this proceeding and a previous suit. *Id.* at 1332. It also found that

Mr. Obradovich was not candid about the inventors' possession of photographs of the 96RL system. *Id.* at 1332. We held, however, that in light of *Therasense*, the finding of materiality and Mr. Obradovich's lack of credibility were insufficient grounds to find intent. *Id.* at 1335. We thus remanded for the district court to determine whether the single reasonable inference of the factual record would be that any of the inventors possessed undisclosed information about the 96RL system, knew it was material, and deliberately decided to withhold that information from the PTO. *Id.*

On remand, the district court reviewed the record and made the findings of fact required under *Therasense*. The district court found that Mr. Obradovich possessed material information based on his own testimony about his personal knowledge of the 96RL system, test drives of the 96RL with the system, and use of figures from the 96RL owner's manual in the patent application he drafted. *Calcar III*, at *9. It further found that Mr. Obradovich knew the information was material because he himself acknowledged the importance of the information he possessed about how the 96RL system was used to access information and present it to the user. *Id.* at *10. The district court also found that the single reasonable inference based on the facts regarding Mr. Obradovich's role in developing the patent application was that Mr. Obradovich deliberately decided to withhold the information from the PTO. *Id.*

The district court expressly rejected Calcar's suggestion that it would have been equally reasonable for the district court to infer that Mr. Obradovich's actions were merely negligent or grossly negligent. In Calcar's view, Mr. Obradovich's inexperience may have contributed to a mistaken or accidental failure to disclose. The district court found, however, that any such suggestion was unsupported by the evidence. It found that the evidence showed that Mr. Obradovich had "ample time and oppor-

tunity" for a comprehensive disclosure, and yet he only disclosed the mere existence of the 96RL system without providing its operational details. *Calcar III*, at \*10. It concluded, therefore, that his failure to disclose other information that would have prevented his patent application from succeeding "demonstrates a deliberative process, not an accident or mistake." *Id.* The district court noted in particular that Calcar's positions and Mr. Obradovich's testimony regarding his knowledge and possession of documents lacked credibility. *Id.* at \*10 n.3; *see also FilmTec Corp. v. Hydranautics*, 982 F.2d 1546, 1553 (Fed. Cir. 1992) ("We will not invade the province of the district court to judge matters of credibility."). Overall, we do not find any clear error in the district court's inference—based on its careful and comprehensive review of the record and eight years of experience with the case— of Mr. Obradovich's specific intent to deceive the PTO.

Finally, while Calcar points to the jury's advisory verdict in 2008 that there was no inequitable conduct, we find this argument unavailing. As we have held, inequitable conduct is "inequitable in nature," and thus the "district court was in no way bound by the jury's finding of no inequitable conduct in this case." *Calcar II*, 651 F.3d at 1334. In any event, after the jury submitted its advisory verdict, the district court requested thousands of pages of testimony from Calcar's previous litigation. Order Requesting Supplemental Briefing, *Am. Calcar, Inc. v. Am. Honda Motor Co.*, No. 06-cv-2433 (S.D. Cal. Sept. 24, 2008), ECF No. 566. This testimony included assertions by Mr. Obradovich that contradicted those made in these proceedings, which led the district court to its determination that Mr. Obradovich lacked credibility. This was evidence that the jury did not see. Therefore, we see no reason why the jury's advisory verdict suggests a reasonable alternative to the district court's inference.

In sum, on remand, the district court did not clearly err in its underlying factual findings of materiality and

intent. Its thorough analysis was fully consistent with the standards and tests set forth in *Therasense*. The district court, therefore, did not abuse its discretion in determining that the patents were unenforceable due to inequitable conduct.

## III

For the aforementioned reasons, we affirm the district court's judgment that the '497, '465, and '795 patents were obtained through inequitable conduct and are thus unenforceable.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

———————————

**AMERICAN CALCAR, INC.,**
*Plaintiff-Appellant,*

**v.**

**AMERICAN HONDA MOTOR CO., INC., AND
HONDA OF AMERICA MANUFACTURING, INC.,**
*Defendant-Appellee.*

———————————

2013-1061

———————————

Appeal from the United States District Court for the Southern District of California in No. 06-CV-2433, Judge Dana M. Sabraw.

———————————

NEWMAN, *Circuit Judge,* dissenting.

American Calcar, Inc. was founded by Michael Obradovich as a business that creates "Quick Tips" booklets with "everything you want to know about your new car in ten seconds or less." *Am. Calcar, Inc. v. Am. Honda Motor Co.,* No. 06-cv-2433, 2012 WL 1328640, at *1 (S.D. Cal. April 17, 2012) ("Dist. Ct. Op."). The Quick Tips booklets are based on information obtained from the manufacturer's Owner's Manual and Calcar observation of the vehicle itself.

The only issue is whether Mr. Obradovich committed inequitable conduct by not providing the PTO, when the parent patent application was filed, with the Acura Owner's Manual and the photographs that the Calcar employees took of the Acura display. These materials were provided to the PTO on reexamination of the '497 patent, and patentability was confirmed by the PTO in light of that additional information.

The factual premises of "inequitable conduct" were not established, for there was not "but-for" materiality and no evidence of intent to deceive. The panel majority distorts the *Therasense* standards, ignores the PTO reexamination, casts the jury aside, and generally disregards the safeguards that this court adopted *en banc*. I respectfully dissent, for the criteria of inequitable conduct are plainly not met.

## DISCUSSION

The patents at issue are for a computer-implemented system for searching, display and control of vehicle functions, presented in a user-friendly form, as in the Quick Tips booklets. The inventors testified that they observed and photographed the Acura 1996 RL navigation system, planning to produce a Quick Tips booklet, and that this system was a "platform" for the patented system.

The patents describe the Acura 96RL navigation system as prior art:

> Recently, navigation systems based on military global positioning system (GPS) technology have emerged. One such navigation system is commercially available as an option for the latest model of the ACURA 3.5 RL automobile. This ACURA navigation system receives signals from a constellation of satellites which is part of the GPS. In response to these signals, the navigation system

> pinpoints the automobile's location (in latitude and longitude). It also detects the automobile's speed and direction. With geographic information stored on a hard disk in an onboard computer, the navigation system is capable of verbally and visually communicating to the user instructions for reaching the destination.

'355 patent, col.1 ll.51–63; '497 patent, col.1 l.57 to col.2 l.2; '465 patent, col.1 l.58 to col.2 l.3; '795 patent, col.1 l.61 to col.2 l.6.

The patents state that they are directed to an improved system that provides quick access to and display of information about multiple vehicle functions. *E.g.*, '497 patent, col.3 ll.23–33. The information may include operational instructions, maintenance procedures, and safety measures. *Id.* at col.5 ll.5–7. The functions that may be controlled include climate control, audio, mirrors, windows, cruise control, lights, and security functions. *Id.* at col.5 ll.45–52. The system may "realize not only AUTO DIRECTOR functions to be described, but also the well-known navigation function." *Id.* at col.5 ll.29–31. The patents state the objective of incorporating a centralized control system in a multifunction display interface. *Id.* at col.6 ll.15–33.

Patentability is not at issue in this appeal. Validity and infringement were tried, appealed, and finally decided in earlier phases of this eight-year litigation. In the trial phase, the jury found that there was not inequitable conduct in the failure to initially provide the Owner's Manual and photographs to the patent examiner. My colleagues do not agree with the jury, although they do not discuss whether there was substantial evidence to support the jury's findings. On the principles established in *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d

1276 (Fed. Cir. 2011) (en banc), inequitable conduct did not lie.

Nonetheless, my colleagues rule that the patents are unenforceable based on the initial failure to send the Owner's Manual and photographs to the PTO. The inequitable conduct with which Mr. Obradovich is charged is that he "did not tell Mr. Yip [his patent attorney] about his experience with the 96RL, nor did he provide Mr. Yip with the Owner's Manual or the photos of the navigation system display screens." Dist. Ct. Op. at 11. However, the PTO established, on reexamination of the '497 patent, that the purportedly withheld information was not material to patentability. In accordance with *Therasense* this ended the inequitable conduct inquiry, for the PTO sustained patentability in view of this information.

In addition, there was no evidence of intent to deceive the PTO. The panel majority impugns Mr. Obradovich's credibility, although they do not say what is disbelieved. The jury heard and saw Mr. Obradovich, on examination and cross-examination, and did not find deceptive intent. My colleagues "infer" clear and convincing evidence of deceptive intent from Mr. Obradovich's initial failure to send his patent attorney the Owner's Manual and the photographs of the Acura display. They postulate that a savvy inventor and businessman such as Mr. Obradovich would have known the information was material to patentability and would therefore withhold it in order to deceive the PTO. However, a more likely inference is that a savvy inventor and businessman would know that a patent obtained through concealment of a material reference is not a reliable commercial asset.

I summarize the majority's flawed application of the law of inequitable conduct:

*Materiality*

A "material" reference in the context of inequitable conduct law is a reference that negates patentability: that is, "but-for" the reference the claim would be patentable. The rule of "but-for materiality" is that if the reference would not have prevented the grant of the patent, it cannot render the patent unenforceable. *Therasense*, 649 F.3d at 1291 ("[P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."); *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) ("To establish materiality, it must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation.").

We need not speculate about whether the PTO would have granted the Calcar patents "but-for" the information in the Owner's Manual and the photographs, for the PTO's reexamination of the '497 patent provides the answer: the PTO confirmed patentability. Reexamination was conducted in full view of not only the targeted information, but also Honda's Preliminary Invalidity Contentions. The purpose of reexamination is to provide PTO expertise in determining patentability. This procedure was followed, and established that the challenged information was not "material" to patentability as determined by the PTO. That ruling was not appealed. My colleagues' contrary holding is not available.

Nonetheless, the panel majority finds that Calcar deliberately withheld the Owner's Manual and photographs from the PTO. However, it cannot be said that the Acura 96RL system was concealed. The Calcar patents all state that their system's hardware and control panel are "derived from a prior art navigation system," citing the Acura system and describing its contribution to a flowchart for the Calcar system:

> Display interfaces 102 include, inter alia, AUTO DIRECTOR display interface 102a, which is illustrated in FIG. 2, together with control panel 205 in FIG. 1. By way of example, but not limitation, the hardware of interface 102a and control panel 205 are derived from a prior art navigation system of the type of the ACURA navigation system. In fact, interface 102a and control panel 205 are used in this illustrative embodiment to realize not only AUTO DIRECTOR functions to be described, but also the well-known navigation function.

'355 patent, col.5 ll.18–27; '497 patent, col.5 ll.22–31; '465 patent, col.5 ll.23–32; '795 patent, col.5 ll.27–36.

The panel majority dismisses the Calcar patent disclosure, stating that "he [Mr. Obradovich] only disclosed the mere existence of the 96RL, without operational details." Maj. Op. at 11. The panel majority finds that there are "undisclosed operational details" in the Acura Owner's Manual, although we are not told what those details are, or how they constitute "but-for" materiality. In contrast, the PTO, reviewing all of the challenged information, concluded that the omitted information is not material to patentability.

Although validity was previously finally decided and is not before us, the panel majority *sua sponte* declares the Calcar patents "obvious, and thus unpatentable." Maj. Op. at 8. In so doing, the majority discards the statutory requirement of consideration of "the invention as a whole," 35 U.S.C. §103.

For Calcar's '465 patent, the panel majority plucks out a single claim term, as follows:

> 1. A system for use in a vehicle comprising:
>     a memory for storing a plurality of displays having predetermined contents, the plurality of

> displays being associated with a plurality of aspects of the vehicle;
>
> an interface for entering a query to conduct **a search concerning an aspect of the vehicle**;
>
> an input device for selecting a result of the search;
>
> a processor responsive to the selected result for identifying at least one of the plurality of displays which is associated with the aspect of the vehicle; and
>
> a display element for showing thereon the at least one display.

(emphasis in Maj. Op.). This is an incorrect legal analysis. In *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) the Court explained that "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art." The invention must be considered as a whole; it is improper to select components or elements of a claimed system for isolated analysis. My colleagues take that flawed path.

My colleagues also incorrectly state that Calcar "concedes" that its invention is no more than the single step of a "search concerning an aspect of the vehicle," *see* claim 1, *supra*. Calcar stressed the novelty of its system as a whole, with its plurality of aspects and displays. The panel majority improperly segregates the claim into what it deems to be new and old elements, reducing Calcar's invention to a single isolated element. The Court reiterated in *KSR* that it is the entirety of the claimed system that is analyzed, not separate components in isolation. 550 U.S. at 418. Calcar's invention is not merely the search for an aspect of the vehicle; it is a computer-implemented system for searching and controlling aspects of the vehicle. This system was not described in the prior art, which includes the Acura 96RL Owner's Manual.

On the correct law, "but-for materiality" of the Owner's Manual and photographs was not shown by clear and convincing evidence.  This alone negates a ruling of inequitable conduct.  *See Therasense*, 649 F.3d at 1287 (holding that both materiality and intent to deceive must be shown; each must be established by clear and convincing evidence).

### *Intent to deceive*

The panel majority also finds that Mr. Obradovich intended to deceive the PTO, again on reasoning that is unsupported by fact and contrary to law.  The majority ignores that the Acura navigation system was identified as prior art in all of the patent specifications, that any omission was remedied with reexamination, and that the jury, viewing the witnesses and hearing the charges and arguments, found that intent to deceive the PTO had not been shown.

My colleagues agree that there was no evidence of intent to deceive.  Thus they devise an "inference" of deceptive intent from the initial omission of the Owner's Manual and the photographs.  In *Therasense* the court stressed the need for rationality and proof, not guess and sentiment; thus the court held that "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  649 F.3d at 1290–91.  In *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 873 (Fed. Cir. 2012) the court held that "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive."

In the absence of any evidence, the panel majority slips into "inference," citing Mr. Obradovich's purported lack of credibility.  The majority appears to reason that if "credibility" can be challenged in any way, adverse infer-

ences on all aspects can be drawn. The defendants attempted to target Mr. Obradovich's credibility throughout the trial, for he was a principal witness. The briefs describe two areas in which credibility was attacked. First, there was uncertainty of recollection about who in the Calcar study team took the photographs of Acura's navigation system in 1996, a dozen years before trial. The district court found that Mr. Obradovich knew of the photos, although his recollection was vague. Second, his recollection was vague regarding the extent to which he "played with" Acura's navigation system during the test drive in 1996. The Honda briefs state that in 2005 Mr. Obradovich stated by deposition that he "played with" the Acura 96RL navigation system in 1996; at a 2007 deposition he did not remember whether he "operated" the Acura system in 1996; and at trial in 2008 he said that he thought he "played with" it in 1996. Whether or not this is an inconsistency of recollection, it is not clear and convincing evidence of intent to deceive the PTO.

The jury presence is of particular relevance to questions of credibility. Mr. Obradovich was examined and cross-examined as to his role in preparation of the patent applications, and the jury found that inequitable conduct had not been shown. The panel majority states that it can ignore the jury verdict because there was evidence that the jury did not see. Honda tells us it provided the court with over a thousand pages of testimony, but does not identify what might affect this issue. My colleagues' reliance on unsupported speculation outside of the record as grounds for destroying valuable property rights is not an appropriate adjudicatory process.

The court in *Therasense* recognized the complexities of the patent application process, where every action taken or not taken is fair game for loose accusation and satellite litigation. The *Therasense* court sought to temper the litigation game of "inequitable conduct," by "tighten[ing]

the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." 649 F.3d at 1290. To bring stability and uniformity to patent law, it is imperative that the law is consistently and correctly applied. I respectfully dissent.